# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

CLEAN FUELS DEVELOPMENT
COALITION, MINNESOTA
SOYBEAN GROWERS ASSOCIATION,
ICM, INC., MINNESOTA SERVICE
STATION & CONVENIENCE STORE
ASSOCIATION, and NATIONAL
ASSOCIATION OF CONVENIENCE
STORES,

          Plaintiffs,

          v.

KATRINA KESSLER, in her official
capacity as Commissioner of the
MINNESOTA POLLUTION
CONTROL AGENCY (MPCA); PETER
TESTER, in his official capacity as
Deputy Commissioner of MPCA;
FRANK KOHLASCH, in his official
capacity as Assistant Commissioner of
MPCA; KIRK KOUDELKA, in his
official capacity as Assistant
Commissioner of MPCA; DANA
VANDERBOSCH, in her official
capacity as Assistant Commissioner of
MPCA; and TIMOTHY J. WALZ, in his
official capacity as Governor of the
State of Minnesota,

          Defendants.

Case No. 23-cv-00610-KMM-DTS
The Honorable Katherine Menendez

MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS
(OR IN THE ALTERNATIVE FOR A
STAY)

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

REGULATORY AND FACTUAL BACKGROUND..................................................4

    I.     HISTORY OF REGULATORY IMPLEMENTATION .........................................5

    II.    THE MINNESOTA RULE .............................................................................9

ARGUMENT ........................................................................................................12

    I.     Plaintiffs do not have standing because Plaintiffs' asserted harms in the 2025 model year are not traceable to the Rule and are not capable of redress by this Court....................................................................................................14

        A.    The Complaint admits that automakers have already committed to their product and sales plans for model year 2025. ........16

        B.    Plaintiffs will not be harmed by the Rule's ZEV standard because it includes a credit allotment sufficient to ensure automakers' compliance for model year 2025. ...............................................................18

        C.    Plaintiffs will not be harmed by the Rule's GHG standard because automakers will need to comply with equally-stringent federal GHG requirements beginning with model year 2025. ............................19

        D.    Plaintiffs will not be harmed by the Rule because recently-enacted federal law and the evolving market favor clean vehicle adoption.............................................................................................................22

    II.    PLAINTIFFS FAIL TO ESTABLISH THAT A CASE OR CONTROVERSY EXISTS BETWEEN THE PARTIES IN THIS CASE. ............................................................25

        A.    The Plaintiffs' equal sovereignty claim (Count II) fails to allege that Defendants' conduct is the cause of Plaintiffs' alleged harm. 26

        B.    Defendants have not adopted regulations applicable to model years in 2026 and beyond; there is no case or controversy for the Court to resolve. .................................................................................................28

III.    THIS COURT DOES NOT HAVE JURISDICTION OVER COUNT II BECAUSE SECTION 307 OF THE CLEAN AIR ACT REQUIRES THE CLAIM TO BE RAISED IN A UNITED STATES CIRCUIT COURT OF APPEALS.............................................................29

IV.    EVEN IF THIS COURT WERE NOT INCLINED TO DISMISS THE CASE, IT SHOULD STAY THE PROCEEDINGS GIVEN THE PENDENCY OF TWO OTHER CASES. ......32

CONCLUSION.............................................................................................................36

# TABLE OF AUTHORITIES

Page

**Supreme Court**

*Atchison, T. & S.F. Ry. Co. v. United States,*
  284 U.S. 248 (1932) ....................................................................................23

*Dayton Power & Light Co. v. Pub. Utilities Comm'n of Ohio,*
  292 U.S. 290 (1934). ...................................................................................23

*Friends of the Earth, Inc. v. Laidlaw Env'l Services,*
  528 U.S. 167 (2000) ....................................................................................15

*Hollingsworth v. Perry,*
  570 U.S. 693 (2013) ....................................................................................25

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ...............................................................................*passim*

*Murphy v. Nat'l Collegiate Athletic Ass'n,*
  138 S. Ct. 1461 (2018) ...............................................................................27

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998) ......................................................................................16

*Uzuegbunam v. Preczewski,*
  141 S. Ct. 792 (2021) ..................................................................................15

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990) ....................................................................................16

**Federal Courts**

*Ali v. Cangemi,*
  419 F.3d 722 (8th Cir. 2005)......................................................................35

*Cal. Dump Truck Owners Ass'n v. Nichols*,
   784 F.3d 500 (9th Cir. 2015)........................................................................30

*Card Tech. Corp. v. DataCard Corp.*,
   2007 WL 551615 (D. Minn. Feb. 21, 2007)..............................................33

*Cent. States Se. & Sw. Areas Pension Fund v. Lakeville Transportation, Inc.*,
   2021 WL 1661239 (D. Minn. Apr. 28, 2021)............................................33

*Chamber of Com. of U.S. v. E.P.A.*,
   642 F.3d 192 (D.C. Cir. 2011) ...........................................................*passim*

*City of Clarkson Valley v. Mineta*,
   495 F.3d 567 (8th Cir. 2007).....................................................................15

*Delorme v. U.S.*,
   354 F.3d 810 (8th Cir., 2004)....................................................................15

*Fountain v. Oasis Legal Fin., LLC*,
   86 F. Supp. 3d 1037 (D. Minn. 2015)......................................................25

*Honeywell Intern., Inv. V. Furuno Elec. Co. Ltd.*,
   2010 WL 3023529 (D. Minn. July 30, 2010) ...........................................33

*Lane v. U.S. Dept. of Ag.*,
   187 F.3d 793 (8th Cir. 1999).....................................................................29

*Let Them Play MN v. Walz*,
   556 F. Supp. 3d 968 (D. Minn. 2021)......................................................35

*MADA v. MPCA*,
   520 F. Supp. 3d 1126 (D. Minn. 2021)...............................................29, 32

*Marshall Cnty. Health Care Auth. v. Shalala*,
   988 F.2d 1221 (D.C. Cir. 1993) ...............................................................21

*McCarney v. Ford Motor Co.*,
   657 F.2d 230 (8th Cir. 1981).....................................................................15

*Miller v. Redwood Toxicology Lab'y, Inc.*,

   688 F.3d 928 (8th Cir. 2012)............................................................21

*Minn. Auto. Dealers Ass'n ("MADA") v. MPCA*,

   986 N.W.2d 225 (Minn. Ct. App. 2023)..............................................28, 32

*Murray Energy Corp. v. EPA*,

   788 F.3d 330 (D.C. Cir. 2015) .........................................................28

*Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*,

   730 F.3d 208 (3d Cir. 2013)...........................................................27

*Neb. Pub. Power Dist. v. MidAm. Energy Co.*,

   234 F.3d 1032 (8th Cir. 2000).................................................25, 27, 28, 29

*Ringo v. Lombardi*,

   677 F.3d 793 (8th Cir. 2012).....................................................25, 27, 28

*State of Mo. v. United States*,

   109 F.3d 440 (8th Cir. 1997)...........................................................30

*Whitney v. Guys, Inc.*,

   700 F.3d 1118 (8th Cir. 2012).........................................................21

## Briefs and Pending Cases

*Union of Concerned Scientists v. Nat'l Highway Traffic Safety Admin.*, No. 19-1230

   (D.C. Cir. June 29, 2022); .............................................................7

*Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, No. 20-1145 (D.C.

   Cir. June 8, 2022) .....................................................................7

*Ohio v. EPA*, No. 22-1081 (D.C. Cir. Mar. 13, 2023); ......................................3, 33, 34

Initial Brief for Private Petitioners, *Ohio v. EPA*, No. 22-1081 (Oct. 24, 2022), ECF

   No. 1970360...........................................................................34

Order at 1, *Ohio v. EPA*, No. 22-1081 (Mar. 13, 2023), ECF No. 1989839 ...............34

Final Brief for Indus. Respondent-Intervenors, *Ohio. v. EPA*, No. 22-1081 (D.C.
Cir. Mar. 20, 2023), ECF No. 1990950 ....................................................................24

## Federal Statutes

28 U.S.C. § 3704 ........................................................................................................27

42 U.S.C. § 7521 ..........................................................................................................4

42 U.S.C. § 7543 ...............................................................................................4, 26, 31

42 U.S.C. § 7607 .............................................................................................1, 3, 30, 31

42 U.S.C. § 7507 ..................................................................................................*passim*

42 U.S.C. § 7543 ..................................................................................................*passim*

44 U.S.C. § 1507. ........................................................................................................21

Pub. L. No. 117-58, 135 Stat. 329 (2021) ...................................................................22

Pub. L. No. 117-169, 136 Stat. 1818 (2022) ...............................................................22

## Minnesota Statutes

Minn. Stat. § 116.07 ......................................................................................................9

## Rules

Fed. R. Civ. P. 12(b) ............................................................................................*passim*

## Federal Regulations

California State Motor Vehicle Pollution Control Standards; Notice of Decision
Granting a Waiver of Clean Air Act Preemption for California's Advanced
Clean Car Program and a Within the Scope Confirmation for California's Zero
Emission Vehicle Amendments for 2017 and Earlier Model Years,
77 Fed. Reg. 62624 (Oct. 15, 2012)..............................................................................6

Decision to Grant California Waiver,

   78 Fed. Reg. 2112 (Jan. 9, 2013) ...................................................................6

The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule Part One: One

   National Program

   84 Fed. Reg. 51310 (Sept. 27, 2019) ..............................................................7

The Safer Affordable Fuel-Efficient (SAFE) Vehicles Rule for Model Years 2021-

   2026 Passenger Cars and Light Trucks

   85 Fed. Reg. 24174  (Apr. 30, 2020)...............................................................7

Protecting Public Health and the Environment and Restoring Science to Tackle

   the Climate Crisis, Exec. Order No. 13990

   86 Fed. Reg. 7037 (Jan. 20, 2021) ..................................................................7

Revised 2023 and Later Model Year Light-Duty Vehicle Greenhouse Gas

   Emissions Standards,

   86 Fed. Reg. 74434 (Dec. 30, 2021) ...............................................7, 8, 12, 24

California State Motor Vehicle Pollution Control Standards; Advanced Clean

   Car Program; Reconsideration of a Previous Withdrawal of a Waiver of

   Preemption; Notice of Decision,

   87 Fed. Reg. 14332 (Mar. 14, 2022)................................................... 5, 7, 31

49 C.F.R. pts. 523, 531, 533, 536, 537 .........................................................6, 7

49 C.F.R. pts. 531, 533. ....................................................................................7


**Minnesota Regulations and Rulemaking**

Minnesota Clean Cars Rule, Minn. R. 7023.0150-.0300 ..................................1, 11, 12

Minn. R. 7023.0250 ....................................................................................1, 12

Minn. R. 7023.0300 ...........................................................................11, 18, 19

45 Minn. Reg. 663 (Dec. 21, 2020) .................................................................10

46 Minn. Reg. 66 (July 26, 2021) ....................................................................10

ALJ Report, *Proposed Rules of MPCA Adopting Vehicle GHG Emissions Standards,*
   *Minn. R. Ch. 7023*, 2021 WL 2029284 (May 7, 2021) ...............................................10

46 Minn. Reg. 755 (Dec. 27, 2021) ...................................................................................11

## Other Authorities

Cal. Code Regs. tit. 13, § 1962.2 ........................................................................11, 12, 19

Cal. Code Regs., tit. 13, § 1962.4 ...............................................................................12

## TABLE OF ABBREVIATIONS

EPA – Environmental Protection Agency

GHG – Greenhouse Gas

LEV – Low-Emissions Vehicle

MPCA – Minnesota Pollution Control Agency

SONAR – Statement of Need and Reasonableness

ZEV – Zero-Emissions Vehicle

## INTRODUCTION

This case should be dismissed because Plaintiffs do not have standing and this Court does not have jurisdiction. Fed. R. Civ. P. 12(b)(1); 42 U.S.C. § 7607(b)(1).

The Complaint alleges that the challenged Rule will require automakers to sell cleaner vehicles in the state than they otherwise might, causing Minnesotans to demand less liquid fuel and fewer internal-combustion engine repairs. Compl. ¶¶ 61-90; Minn. R. 7023.0150-.0300 ("Minnesota Rule" or "Rule"). According to the Complaint, Plaintiffs' interests in peddling liquid fuels and repairing internal-combustion engines will be harmed as Minnesotans transition to cleaner and electrified vehicle options. *Id*. That transition is coming anyway. There will be no injury to the Plaintiffs traceable to the Rule, and no injury that an order setting the Rule aside would relieve. Under Rule 12(b)(1), this Court should dismiss the Plaintiffs' case.

Simply put, clean vehicles are coming to Minnesota whether the Plaintiffs like it or not. Given market realities and regulatory developments, the Rule will not dictate automakers' approach:

- Automakers are already committed to their product and sales plans for the relevant timeframe. Compl. ¶ 65.

- Under the Rule's zero-emissions vehicle program, automakers will receive an allotment of credits sufficient to ensure compliance without altering their plans.

1

- Under the Rule's greenhouse gas emissions program, the Environmental Protection Agency's ("EPA") standards are aligned with (or more stringent than) the standards that the Rule adopts for Minnesota in the relevant timeframe. Automakers will need to meet the federal standards notwithstanding any requirements of the Minnesota Rule.

Given these realities, even if the Plaintiffs were to obtain a declaration that the Rule is invalid, they would get no relief. The Complaint does not allege that striking down the Minnesota Rule would cause automakers to change their plans, nor would doing so abrogate the equally-stringent federal EPA standards.

The Complaint also raises a constitutional equal sovereignty claim (Count II) that suffers from an additional but similar defect. The Minnesota Pollution Control Agency ("MPCA") personnel and the Governor of Minnesota are the wrong defendants for the claim because this Court cannot cure the alleged constitutional infirmity by invalidating Minnesota's Rule. This aspect of the Complaint should be dismissed because there is no case or controversy between the parties that this Court can resolve. Fed. R. Civ. P. 12(b)(1).

For the same reason, to the extent the Complaint seeks a declaratory judgment barring the potential for future regulations that would apply sometime after the 2026 model year, Comp. ¶¶ 136-139, the issue is not ripe and is not justiciable. No such regulation exists, nor has it been proposed. This aspect of the Complaint should be dismissed for lack of a case or controversy under Rule 12(b)(1).

Moreover, the Court does not have jurisdiction to suspend EPA's decision to issue a Section 209(b) waiver to California—the essential component of Plaintiffs' equal sovereignty claim (Count II). But a challenge to EPA's waiver decision must be brought in a federal Court of Appeals according to Clean Air Act Section 307. 42 U.S.C. § 7607(b)(1). Thus, Count II should be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).

Finally, this Court should exercise its discretion to stay the case given two ongoing cases that are much more developed. The Rule is currently before the Minnesota Supreme Court on a Petition for Further Review in a case that challenges the Rule's validity. The Minnesota Supreme Court will decide whether to hear that case imminently. And in another case pending before the D.C. Circuit Court of Appeals, a group of intervenors including the Plaintiffs here[1] assert an identical claim as Count II, only against EPA. That case is fully briefed and set for oral argument. This case should be stayed because the outcomes of those two matters could streamline or moot this Court's consideration of the issues.

---

[1] All of the Plaintiffs here are also parties to the *Ohio v. EPA* case except Minnesota Service Station & Convenience Store Association, disused in further detail in Argument Section III, *infra*. *Ohio v. EPA*, No. 22-1081 (D.C. Cir. Mar. 13, 2023).

3

## REGULATORY AND FACTUAL BACKGROUND

For more than fifty years, there have been dual regulatory schemes applicable to auto emissions under the Clean Air Act, both of which are subject to EPA decision-making. EPA promulgates rules with national coverage that apply everywhere unless California adopts its own standards.  42 U.S.C. § 7521(a). If California does promulgate a second set of standards that is applicable in California—and in any other state that elects to adopt them—then they may be enforced if EPA issues a Clean Air Act waiver of preemption. 42 U.S.C. §§ 7507, 7543(b).  More specifically:

- Section 202 of the Clean Air Act requires EPA to set nationally-applicable vehicle emissions standards. 42 U.S.C. § 7521(a). It does so via EPA rulemaking. Unless a state chooses otherwise (discussed below), these national standards will apply by default.

- Section 209(a) generally preempts states from developing their own piecemeal standards that differ from EPA's nationally-applicable rulemaking. 42. U.S.C. § 7543(a).

- Section 209(b) provides a preemption exception for any state that already had its own program in place at the time it was adopted (i.e., California). 42 U.S.C. § 7543(b). California may apply for, and EPA generally must issue, a waiver of preemption upon EPA's determination that a few straightforward conditions are present. *Id*.

- Section 177 provides that any state with qualifying plan provisions approved by EPA may adopt the California standards without any further application to, or approval from, EPA; the only requirements are that the standards must be identical to California's and provide at least two years' lead time to automakers. 42 U.S.C. § 7507.

In the regulatory documents submitted along with this memorandum, standards are generally identified as "LEV" for both California and EPA's low-emission vehicle programs, "GHG" for both California and EPA's greenhouse gas programs, and "ZEV" for California's zero-emissions vehicle program (EPA does not have a counterpart ZEV program.) The California package comprising its suite of regulations may be referenced as "ACC" for Advanced Clean Cars. The Complaint specifically targets the Rule's GHG and ZEV requirements.

## I.    HISTORY OF REGULATORY IMPLEMENTATION

Since 1968, California has received numerous Section 209(b) waivers from EPA, including for its GHG and ZEV programs, most recently in 2013. Compl. ¶ 110; Ex. A (Reconsideration of Previous Waiver Withdrawal, 87 Fed. Reg. 14332, 14333 n.5 (collecting history and citation of EPA's prior waivers issued for California's standards) (Mar. 14, 2022)).[2] The Rule's GHG regulations are expressed in terms of fleet-wide emission averages, meaning that automakers comply with them by demonstrating that the fleet of vehicles sold into the state comply with applicable limits. The federal government, through EPA, has developed its own standards for national fleetwide GHG emissions, but has not adopted any equivalent to California's ZEV standard.

---

[2] All cites to "Ex." are to the Exhibits in the Declaration of Joseph Heegaard, filed contemporaneously with this memorandum.

Today, 17 states plus the District of Columbia have adopted some or all of California's LEV, GHG, and ZEV standards; known collectively as "Section 177 States." Together with California, they compromise approximately 40 percent of the national market. Compl. ¶ 111; Ex. B (California Air Resources Board, States that have Adopted California's Vehicle Standards under Section 177 of the Federal Clean Air Act (2022)).

Although it was disrupted during the Trump Administration, EPA and California worked together to develop a national approach that ensured EPA's GHG-compliant fleets would have also met California's GHG standards and vice-versa:

- In 2012, EPA promulgated a GHG standard that it developed in coordination with California, essentially harmonizing the Section 202 and Section 209(b) GHG emissions standards. Ex. C (2017 and Later Model Year Emissions Standards, 77 Fed. Reg. 62624, 62630 (Oct. 15, 2012) (ensuring that "manufacturers can build a single fleet of vehicles that satisfy all requirements under both federal programs as well as under California's program . . ..") (codified at 49 C.F.R. pts. 523, 531, 533, 536, 537)).[3]

---

[3] California adopted a state regulation providing an option for manufacturers to meet California's GHG emissions standards by meeting EPA's standards. Ex. G (Office of Transportation and Air Quality, EPA, Decision to Grant California's Request for Waiver of Preemption for its Advanced Clean Car Program (2012)). And in granting California's Section 209(b) waiver for its GHG emissions program, EPA recognized that "[t]he California GHG standards are almost identical in stringency and structure to the federal MY2017-2025 GHG standards." *Id*.; Ex. H (Decision to Grant California Waiver, 78 Fed. Reg. 2112 (Jan. 9, 2013)).

- In 2019 and 2020, the Trump administration promulgated "SAFE Part I," which rescinded EPA's already-granted 2013 Section 209(b) waiver, and "SAFE Part II," which rolled back the stringency of federal GHG standards for model years 2021-2025. Ex. D (SAFE Part I, 84 Fed. Reg. 51310 (Sept. 27, 2019) (codified at 49 C.F.R. pts. 531, 533)); Ex. E (SAFE Part II, 85 Fed. Reg. 24174 (Apr. 30, 2020) (codified at 49 C.F.R. pts. 523, 531, 533, 536, 537)).[4]

- In 2021 and 2022, the Biden administration then promulgated revised GHG standards for model years 2023-2025 and reinstated California's Section 209(b) waiver. Ex. F (Revised 2023 and Later Model Year Emissions Standards, 86 Fed. Reg. 74434 (Dec. 30, 2021) (adopting federal GHG standards)); Ex. A (87 Fed. Reg. at 14379 (rescinding SAFE I's waiver withdrawal)).

Importantly here, the GHG standards that EPA revised in its December 2021 rulemaking apply nationally on a fleetwide basis and restore parity with the 2012 standards (which were themselves harmonized with the EPA-approved state standards):

---

[4] Minnesota joined a coalition of states challenging these actions as unlawful in the D.C. Circuit Court of Appeals. *See Union of Concerned Scientists v. Nat'l Highway Traffic Safety Admin.*, No. 19-1230 (D.C. Cir. June 29, 2022) (SAFE I); *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, No. 20-1145 (D.C. Cir. June 8, 2022) (SAFE II). Before the D.C. Circuit could vacate the SAFE I and II actions, a new administration was elected and assumed office in January 2021; it immediately directed EPA to reconsider the SAFE actions. *See* Ex. I (Exec. Order No. 13990, 86 Fed. Reg. 7037 (Jan. 25, 2021)).



Figure 1 EPA Final Industry Fleet-Wide CO₂ Compliance Targets, Compared to 2012 and SAFE Rules, the Proposal and Alternative 2 minus 10, g/mile, MYs 2020-2026 and later

Ex. F (86 Fed. Reg. at 74440 Fig.1 (annotated in blue)). In this figure, the dashed line labeled "2012 FRM" depicts the prior EPA standards that were "almost identical" to the state standards. Ex. G at 2; *accord* Ex. F (86 Fed. Reg. at 74457 (describing history of alignment with California's GHG program)). EPA depicts its 2021 GHG standards as intersecting the 2012 standards in model year 2025. *Id.* at 74440 Fig.1.[5] This is an important timeframe because as is discussed in the next subsection, the Minnesota rule will not go into effect until model year 2025. Also

---

[5] EPA proposes even more stringent GHG standards for 2027 through 2032. Ex. U (Office of Transportation and Air Quality, EPA, Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles at 3 (2023)).

important is the fact that these federal GHG standards will become even more stringent in 2026. *Id*.

The Complaint relies on MPCA "admissions" that the Rule was intended to improve vehicle emissions over the federal SAFE II GHG standards. *See* Compl. ¶¶61-90; Ex. K (MPCA Statement of Need and Reasonableness ("SONAR") for Proposed Revisions to Minnesota Rules at 8, at 19-20 (describing how the Rule combats the "backsliding" of SAFE II), 37 (same), 82 (same) (Dec. 21, 2021)). But since then, the federal GHG standards were revised to be just as stringent as (and even more stringent than) the Rule's. *Compare* Compl. ¶¶61-90 *with* Ex. F (restoring parity). The Complaint <u>does not</u> allege that if the Rule were held invalid today, with the revised federal GHG standards in place, Plaintiffs would with any certainty sell more liquid fuel or be able to repair more internal combustion engines.

## II.    THE MINNESOTA RULE

Minnesota law requires MPCA to protect public health and the environment from air pollution. Minn. Stat. § 116.07, subd. 2. That is what the Rule was intended to accomplish. Ex. K at 8-9. The severity of the climate crisis and the public health harms from automobile pollution in general, are well-known and cannot possibly be fully recounted here. But in adopting the Rule, MPCA recognized the impact of

the climate crisis on the State of Minnesota, including increasing temperatures and frequent extreme precipitation events. *Id*.

The single largest source of GHG emissions in Minnesota is the transportation sector. *Id*.[6] In light of the SAFE I and II rollbacks, MPCA began the rulemaking process in 2019, and in December 2020 published a proposed clean cars rule. Ex. L (45 Minn. Reg. 659, 663 (Dec. 21, 2020)). As explained in the rulemaking record, the Rule was intended to reduce emissions from vehicles with internal combustion engines and accelerate the adoption of ZEVs in the state, including by ensuring such vehicles were made available to Minnesota residents who want to buy them. Ex. K at 12-13, 46.[7]

In March 2021, an administrative law judge held a hearing to consider the rule and issued a report approving of it on May 7, 2021. Ex. M (*Proposed Rules of MPCA Adopting Vehicle GHG Emissions Standards, Minn. R. Ch. 7023,* 2021 WL 2029284 (May 7, 2021). MPCA then adopted as proposed by notice published in the Minnesota State Register on July 26, 2021. Ex. N (46 Minn. Reg. 57, 66 (July 26,

---

[6] *See also* Ex. W (Minn. Dept. of Transp., Pathways to Decarbonizing Transportation in Minnesota at 14 (2019)).

[7] MPCA assessed relevant scientific and technical information. Exs. K at 20-21 (evaluating benefits even taking into account the manufacturing of the vehicle and battery), P (Technical Support Document)). Increased use of biofuels is one important component of decarbonizing the transportation sector. Ex. K at 8, 38; Ex. W at 5 Fig.1, 41.

2021)). The final Rule is now published at Minnesota Rules 7023.0150 through 7023.0300. And on December 27, 2021, MPCA published official notice that the Rule's first effective model year would be model year 2025. Ex. O (46 Minn. Reg. 741, 755 (Dec. 27, 2021)).

More recent developments also apply to the ZEV and GHG components of the Rule. First, automakers are not required to deliver additional ZEV vehicles into the Minnesota market for the 2025 model year. That is because for "the first effective model year" each automaker will receive "a credit allotment equivalent to the first effective model year's ZEV credit requirement for that motor vehicle manufacturer." Minn. R. 7023.0300, subp. 5(A). In short, each manufacturer will receive a year's worth of credits. But given recent changes, 2025 will be the first and only applicable model year for the ZEV. That is because the Rule was first promulgated in 2021, it adopted the California ZEV requirements "as amended." Minn. R. 7023.0150, subp. 2 (incorporation by reference as amended), Minn. R. 7023.0250, subp. 3(B); Minn. R. 7023.0300, subp. 1 (incorporating Cal. Code Regs. tit. 13, § 1962.2 for the ZEV standard). At the time the Rule was published, the incorporated portions of the California ZEV regulations applied to "2018 and subsequent model years." Ex. Q (Final Regulation Order on Amendments to Cal. Code Regs. tit. 13, § 1962.2 (ZEV amendments)). On August 25, 2022, California amended these regulations to apply to only "2018 through 2025 Model Year"

11

vehicles. *Id.* Thus, the one-year credit allotment begins in 2025 while the ZEV requirement ends in 2025. This will ensure compliance without automakers having to adjust their plans.

Of note, California also promulgated <u>new sections</u> of the California Code of Regulations that establish ZEV standards for model year 2026 and beyond. *See* Compl. ¶¶ 136-139; Cal. Code Regs., tit. 13, § 1962.4. MPCA has taken no action to adopt these new standards, and the Rule does not incorporate these new regulation numbers. *Compare* Minn. R. 7023.0150 *with* Compl. ¶¶ 136-139.

Second, as discussed above, the GHG program (Minn. R. 7023.0250) was developed in the context of EPA's SAFE I and SAFE II actions as of 2019 and 2020. Ex. K. at 19-20. But after MPCA promulgated the Minnesota Rule, EPA promulgated its own December 2021 rulemaking which restored the stringency of the nationally-applicable GHG standards. Ex. F (86 Fed. Reg. at 74440 Fig.1); Fact Section I *supra*. Beginning with the 2025 model year, the federal GHG standards will be as stringent as (or more stringent than) the Rule's on a national fleet-wide basis. *Id.*

## ARGUMENT

Counts I and II both rely on an alleged harm: that, because automakers will deliver a cleaner fleet of vehicles into the state, Minnesotans will have less demand for liquid fuel products and for repair of internal combustion engines. Compl. ¶¶

61-91. Given the automakers' existing product plans, the Rule's ZEV credit allotment, current federal GHG regulations, new federal statutes, and the *de facto* clean-vehicle market, the regulated automakers will nonetheless sell (and intend to sell) a cleaner fleet of vehicles in Minnesota regardless of the Rule; the Complaint expressly admits as much. *E.g.*, Compl. ¶ 65; *see also* Fact Section, *supra*. The outcome that Plaintiffs complain about is now inevitable regardless of the Rule, not traceable to the Rule, and incapable of redress by invalidating the Rule. Without such traceability or redressability, Plaintiffs do not have standing to bring Counts I or II.

Further, Plaintiffs' equal sovereignty claim (Count II) is not a claim against the State of Minnesota because it challenges a federal statute, Section 209(b) of the Clean Air Act, California's exercise of authority to develop clean vehicle standards, and EPA's decision to issue California a waiver. Minnesota, the Defendant here, did not exercise any powers under Section 209(b), did not develop standards, and did not apply for, receive, nor issue a waiver. Those were actions of California and EPA, respectively. Any relief that this Court could order against the Minnesota Defendants would not resolve the Complaint's allegations against California and the federal government. Count II should be dismissed because there is no case or controversy between the parties in this matter.

Plaintiffs also do not have standing to challenge California's recently-adopted ZEV regulations for 2026 and subsequent model years because those regulations have not been adopted in Minnesota. There is no case or controversy over them.

Moreover, under Section 307 of the Clean Air Act, this Court does not have jurisdiction to hear Petitioners' challenge to EPA's decision to reinstate California's Section 209(b) waiver. Such a case must be brought in a federal court of appeals.

This case should be dismissed. But even if this Court were not inclined to dismiss at this time, given the existing litigation before the Minnesota Supreme Court and D.C. Circuit Court of Appeals, this Court should, alternatively, stay the proceedings.

## I.    PLAINTIFFS DO NOT HAVE STANDING BECAUSE PLAINTIFFS' ASSERTED HARMS IN THE 2025 MODEL YEAR ARE NOT TRACEABLE TO THE RULE AND ARE NOT CAPABLE OF REDRESS BY THIS COURT.

Even taking all of its allegations as true, the Complaint fails to establish that Plaintiffs have standing to challenge the standards of the Minnesota Rule, because their alleged harms are not traceable to, or redressable by, Defendants. The regulated automakers are already committed to their plans for the 2025 model year. And the ZEV standard includes a credit bank that will ensure automakers' automatic compliance in model year 2025. Further, automakers will need to

14

comply with EPA's GHG standards, which will be as stringent or more stringent than the Rule. Finally, market conditions, newly-enacted federal law, and proposed future federal regulations will all continue to push toward clean vehicle adoption.

Standing is a jurisdictional prerequisite that must be resolved before reaching the merits of a suit. *See*, *e.g.*, *McCarney v. Ford Motor Co.*, 657 F.2d 230, 233 (8th Cir. 1981). A "plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env'l Services*, 528 U.S. 167, 180-181 (2000); *Delorme v. U.S.*, 354 F.3d 810, 815 (8th Cir., 2004). Plaintiffs bear the burden of establishing these elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 570 (8th Cir. 2007) (remanding for determination of whether plaintiff met its burden of proof for standing).

"Because redressability is an irreducible component of standing, no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) (quotation omitted). The remedy must be more than the "psychic satisfaction" of

knowing the laws are faithfully enforced because that does not directly redress a cognizable injury; relief "that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998). A generalized interest in deterrence is an insufficient remedy for Article III purposes. *Id.* at 108. "Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quotation omitted).

In addition, it is "substantially more difficult" to establish standing where the plaintiff is not the subject of the challenged regulation. *Lujan*, 504 U.S. at 562 (quotation omitted)(the "existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors" imposes a heavy burden on plaintiffs to establish standing). Specifically, a plaintiff must allege facts showing that the regulated industry's "choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.*

### A.   The Complaint admits that automakers have already committed to their product and sales plans for model year 2025.

The Rule regulates the conduct of light-duty automobile manufacturers, not the Plaintiffs here nor the consumers of cars and fuel. The automakers are

independent third parties that will make their own choices about how to comply with the federal and state regulatory landscape. The alleged harm here wholly depends on how these automakers decide to conduct their own affairs, thus undermining Plaintiffs' standing. *Lujan*, 504 U.S. at 562.

The Complaint explicitly confirms that "automakers either already have finalized, or will imminently finalize, their production and sales plans for their model year 2025 vehicles that are subject to MPCA's new rules." Compl. ¶ 65. This concession is consistent with the position automakers took in seeking expedited review of the legal challenge to SAFE I. They asserted that because auto manufacturing is a "long lead-time industry," their production and sales plans were designed to meet federal and state regulations even in the absence of a waiver for the latter. Ex. R (Motion by Intervenors for Expedited Consideration of this Case and an Expedited Briefing Schedule at 3 (long lead-time), 5 (same), 11 (same), 16, *Union of Concerned Scientists v. Nat'l Highway Traffic Safety Admin.*, No. 19-1230 (D.C. Cir. Dec. 24, 2019), ECF No. 1821514).

Thus, the Court cannot offer relief from the Rule where the manufacturers have already committed to their plans that will result in the 2025 model year fleet consuming less liquid fuel and necessitating fewer internal-combustion engine repairs.

Given this admission, the Complaint does not and cannot allege facts that the Rule, as opposed to automakers' "own business plans," would be the cause of Plaintiffs' alleged injuries, let alone that automakers would change those plans even if Plaintiffs were successful on the merits here. *Chamber of Com. of U.S. v. E.P.A.*, 642 F.3d 192, 204 (D.C. Cir. 2011). The claims should be dismissed for lack of standing. *Lujan*, 504 U.S.at 561; Fed. R. Civ. P. 12(b)(1).

**B.    Plaintiffs will not be harmed by the Rule's ZEV standard because it includes a credit allotment sufficient to ensure automakers' compliance for model year 2025.**

The Complaint hinges on Plaintiffs' allegation that the Rule will necessarily force automakers to deliver more electrified vehicles into the state than they otherwise would. *E.g.* Compl. ¶¶ 5, 62-64. Plaintiffs completely fail to explain how the ZEV requirement would cause that to happen. Compl. at *passim.*

Nor could they, because the Rule allots sufficient credits to automakers in the first year to ensure automatic compliance. Minn. R. 7023.0300, subp. 5 ("Onetime credit allotment"). For the first effective model year, the commissioner must "deposit into each motor vehicle manufacturer's account a credit allotment equivalent to the first effective model year's ZEV credit requirement for that motor vehicle manufacturer." *Id.*; Fact Section II, *supra*. In other words, automakers need not make any plans in order to comply with the Rule's ZEV requirements for model year 2025.

18

And Model Year 2025 is now the only one for which ZEV requirements apply. When California adopted new ZEV standards (in a new code section) for model year 2026 and beyond, *see* Compl. ¶¶ 136-139, it also amended the section incorporated in the Rule's ZEV regulation. Minn. R. 7023.0300 (incorporating by reference Cal. Code Regs., tit. 13, § 1962.2); Ex. Q (Cal. Code Regs., tit. 13, § 1962.2(b)(1)(A) (changing "2018 and subsequent" to "2018 through 2025")); Fact Section II, *supra*. Thus, the Rule's ZEV regulation ends after model year 2025.

Automakers will not be "forced" to take any particular action to comply with the ZEV standard.

The Complaint does not (and cannot) contain any allegation explaining how the ZEV standard would compel automakers to deliver a fleet of vehicles that Plaintiffs would find harmful, or that would be redressed by a favorable decision from this Court. The claims directed to the ZEV requirements should therefore be dismissed for lack of standing. *Lujan*, 504 U.S. at 561; Fed. R. Civ. P. 12(b)(1).

**C.    Plaintiffs will not be harmed by the Rule's GHG standard because automakers will need to comply with equally-stringent federal GHG requirements beginning with model year 2025.**

Another fundamental problem with the Complaint is that it fails to acknowledge that the latest federal GHG standards are at least as stringent as the challenged Rule. *See* Fact Section I, *supra*. Plaintiffs take advantage of a brief window of time in 2019 and 2020 during which the federal government rolled back

19

the stringency of GHG standards. Compl. ¶¶62-64 (reduction in fuel consumption), 76 (same), 87 (less repairs). Against the backdrop of those rollbacks, the Rule would indeed have produced benefits. *Id*. But in the last two years, there have been many regulatory developments that undermine the basis of the Complaint. In model year 2025, automakers will need to comply with the federal GHG standards regardless of the Rule. Fact Section I, *supra*. The standards that EPA finalized in December 2021 require the same level of performance as the Rule for model year 2025. *Id*.

This same issue arose in a 2011 D.C. Circuit Court case challenging EPA's decision to issue California its Section 209(b) waiver brought by (among others) the National Automobile Dealers Association. There, the court found the case was moot because the federal standards would be just as stringent as California's. *Chamber of Com..*, 642 F.3d at 205-206. EPA had already ensured regulatory alignment between the California standards and the federal standards when the court adjudicated the matter:[8]

> Beginning in MY 2012, automobile manufacturers will have to comply with the national standards whether we vacate the waiver decision or not. Hence, the national standards, and not EPA's waiver decision, will be responsible for any injury NADA members may suffer . . .

---

[8] Mootness provides this Court with an alternative basis for dismissal under Rule 12(b)(1).

*Id*. at 206. When federal and state standards are aligned, "the national standards, and not [California's], will be responsible for any injury" the Plaintiffs or their "members may suffer." *Id*.

The same is true here. The Minnesota Rule was originally drafted and adopted at a time when the California standards and federal standards were out of alignment because of the prior administration's SAFE GHG standards. *See* Ex. K; Fact Section I *supra*. But that is no longer the case. The SAFE II standards have since been abrogated. *See* Ex. F. And under the current administration, EPA promulgated updated federal average GHG standards for the 2025 model year that align with Minnesota's rule. *Id*.[9]

The Complaint does not allege that the fleet delivered into Minnesota will fall short of the nationwide GHG standards for model year 2025. And that is particularly unlikely because manufacturers will need to be on a path to comply with the even more stringent federal GHG requirements for model year 2026, *id.*,

---

[9] These regulatory materials are fairly implicated on the face of the Complaint which expressly invokes EPA's auto regulations. In considering a motion to dismiss, Courts may consider materials necessarily embraced by the pleadings. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012); *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012). And of course the Federal Register is subject to judicial notice. 44 U.S.C. § 1507; *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

not to mention the increasingly-strict standards that EPA has proposed for model years 2027 through 2032.[10]

The Complaint thus does not allege facts sufficient to show that manufacturers "would proceed on a different course more favorable to" Plaintiffs if this Court were to declare the Rule invalid. *Chamber of Com.*, 642 F.3d at 206. This aspect of the Complaint should be dismissed. Fed. R. Civ. P. 12(b)(1).

**D.   Plaintiffs will not be harmed by the Rule because recently-enacted federal law and the evolving market favor clean vehicle adoption.**

The Complaint also targets clean-vehicle adoption rates as though the Rule is solely responsible for forcing that trend. Compl. ¶¶ 60-91. But the Rule does not exist in a vacuum. Several additional developments—both legal and practical—will lead to increased clean vehicle adoption rates regardless of the Rule or its validity.

For example, the federal government recently enacted two landmark pieces of legislation that are explicitly designed to encourage development of the clean vehicle market segment—both passed after the Minnesota Rule was promulgated. First, on November 15, 2021, the federal government passed the Bipartisan Infrastructure Law. Pub. L. No. 117-58, 135 Stat. 329 (2021). Among other things,

---

[10] *See also* Ex. U.

that law provides billions of dollars dedicated to building a nationwide network of electric vehicle chargers and to strengthening the battery supply chain. Ex. S (The White House, A Guidebook to the Bipartisan Infrastructure Law at 136, 145, 150, 162-63 (2022)). Second, on August 16, 2022, the federal government passed the Inflation Reduction Act. Pub. L. No. 117-169, 136 Stat. 1818 (2022). Among other things, this law incentivizes adoption of low-emission and zero-emission vehicles through tax credits including a $7,500 per vehicle income tax credit to purchasers of new battery electric and plug in hybrid vehicles, and a $4,000 income tax credit to used clean-vehicle purchasers. Ex. V. (The White House, A Guidebook to the IRA's Investments at 46-51 (2023)).

Beyond federal law, the market is continuing to change in ways that favor reduced fossil fuel consumption and less reliance on internal combustion engines.[11]

For one thing, a reduction in fossil fuel consumption does not equate to a proportional reduction in biofuel consumption. Even with increased clean vehicles, decarbonization <u>also</u> depends on increased biofuels usage. Ex. K at 8, 38 (describing "portfolio approach"); Ex. W at 5 Fig.1, 41 (same).

---

[11] This Court may take judicial notice of market conditions on a motion to dismiss. *Dayton Power & Light Co. v. Pub. Utilities Comm'n of Ohio*, 292 U.S. 290, 311 (1934); *Atchison, T. & S.F. Ry. Co. v. United States*, 284 U.S. 248, 260 (1932) (taking judicial notice of market conditions for railroads).

For another, more electric vehicle options will be available to consumers in the 2025 model year than ever before—with greater range, charging speed, and other consumer-friendly features. In the 2011 litigation over the California waiver, the court observed that "market conditions had changed substantially" in a very short amount of time, bringing the market in line with California's standards. *Chamber of Com.*, 642 F.3d at 204. This mooted automakers' alleged injury. *Id.* More recently in the currently-pending *Ohio v. EPA* matter, a coalition of automakers wrote that the California standard now "broadly aligns with consumer demand and other regulatory and market forces." Ex. T (Final Brief for Indus. Respondent-Intervenors at 5, *Ohio. v. EPA*, No. 22-1081 (D.C. Cir. Mar. 20, 2023), ECF No. 1990950). They went on to observe that their industry's transition to cleaner vehicles "is accelerating for numerous reasons beyond compliance with California's [and Minnesota's] regulatory program." *Id.* at 11; *see also id.* at 11-14 (describing market forces). These automakers described their substantial committed investments—including $90 billion from just two automakers—to this transition. *Id.* at 2-3. And they are not alone. Ex. F (86 Fed. Reg. at 74486 (summarizing additional automaker announcements)).

It is perhaps because of these trends that the Complaint does not (and cannot credibly) allege that if the Minnesota Rule were declared invalid, automakers would deliver a fleet of vehicles that Plaintiffs prefer—one that would

consume more fuel and require more repairs. Compl. ¶¶ 61-91. Without any allegation that the Plaintiffs' requested relief would actually redress Plaintiffs' alleged injury, Plaintiffs cannot meet their burden to establish standing. *Lujan*, 504 U.S. at 561; Fed. R. Civ. P. 12(b)(1).

## II.   PLAINTIFFS FAIL TO ESTABLISH THAT A CASE OR CONTROVERSY EXISTS BETWEEN THE PARTIES IN THIS CASE.

In addition to Plaintiffs' lack of standing on traceability and redressability grounds, the Complaint also fails to allege an actual case or controversy arising from Plaintiff's equal sovereignty claim (Count II), or from California's new ZEV regulations applicable to model years 2026 and beyond (which do not even exist in Minnesota). Neither of these issues fairly target any conduct by the Defendants in this case. *Fountain v. Oasis Legal Fin., LLC*, 86 F. Supp. 3d 1037, 1042 (D. Minn. 2015) (requiring a causal connection between the injury and the defendant's conduct) (*citing Lujan*, 504 U.S. at 560-61).

Courts must consider only "real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Neb. Pub. Power Dist. v. MidAm. Energy Co.*, 234 F.3d 1032, 1037–38 (8th Cir. 2000) (quotation omitted); *accord Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). A federal court lacks the authority to offer advisory opinions or "to decide questions that cannot affect the rights of litigants in the case before them." *Ringo v. Lombardi*, 677 F.3d 793, 796 (8th Cir. 2012) (quotation omitted).

### A.    The Plaintiffs' equal sovereignty claim (Count II) fails to allege that Defendants' conduct is the cause of Plaintiffs' alleged harm.

Count II raises a claim for constitutional equal sovereignty, which does not have a sufficient nexus to the challenged Rule or the specific Defendants before this Court. The Count specifically attacks a <u>federal statute</u> and <u>EPA's decision</u> to grant California a waver to adopt and enforce them:

> Congress may not selectively grant a core attribute of state sovereignty—here, a state's authority to enact and enforce laws promoting the health and welfare of its citizens—to favored states and withhold it from similarly situated but disfavored states.

Compl. ¶¶ 37, 40 (alleging Congress cannot grant more regulatory authority to one state than another), 168-173 (Count II hinging entirely on criticisms about Section 209(b)). None of that is Defendants' doing.

Section 209(b) exclusively governs EPA, not Minnesota. Compl. n.4, ¶¶ 106-111, 162-173; *see also* 42 U.S.C. § 7543(b); Doc. 20 (Notice of Constitutional Challenge to 42 U.S.C. §§ 7543, 7507). Minnesota is federally authorized under Section 177 to choose between either of two options, both of which exist by dint of EPA action. A state can adopt California-developed standards that have been approved by EPA via the Section 209(b) waiver process, or it can opt to default to the EPA-developed national standards. 42 U.S.C. § 7507. But once a state decides to invoke Section 177, EPA plays no role. *Id*. None of the Defendants here developed California's standards, applied to EPA for a Section 209(b) waiver,

determined that a waiver should be granted, or issued EPA's waiver to California. And by the same token, neither California nor EPA developed, imposed, or approved of Minnesota's Rule.

Moreover, Plaintiffs make no specific allegation about how Section 177 is supposedly unconstitutional—only that Section 209(b) is unconstitutional. Compl. ¶¶ 37-38 (complaining that California, not Minnesota, receives a "special privilege."), 108 (same), 162-173 (same). Minnesota's Rule is not the subject of the Plaintiffs' Section 209(b) allegations. *Id*.

Moreover, the Complaint's requested relief would not resolve the equal sovereignty issue. This Court can only grant relief as to the litigants before it; declaring Minnesota's Rule invalid simply would not resolve the existence of Section 209(b) or EPA's waiver determination. *Ringo*, 677 F.3d at 796; *Neb. Pub. Power*, 234 F.3d at 1037 (the actual parties before the court must have adverse interests). Moreover, the limited relief that Plaintiffs seek specific to the Minnesota Rule undermines their standing to bring a broader equal sovereignty case. *Id*.; *see also, e.g., Nat'l Collegiate Athletic Ass'n v. Governor of New Jersey*, 730 F.3d 208, 214, 241 (3d Cir. 2013) (rejecting equal sovereignty challenge, in part because the requested relief was limited to only one state), *rev'd on other grounds Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018); *see also* 28 U.S.C. § 3704(a)(1).

Count II should be dismissed because the claim does not reflect a live dispute about the Minnesota Defendants' conduct, much less one that can be remedied by granting relief as to Minnesota's Rule, and seeks an improper advisory opinion as to parties not before the Court as litigants. *Lujan*, 504 U.S. at 560-61; *Ringo*, 677 F.3d at 796; *Neb. Pub. Power*, 234 F.3d at 1037, Fed. R. Civ. P. 12(b)(1).

### B. Defendants have not adopted regulations applicable to model years in 2026 and beyond; there is no case or controversy for the Court to resolve.

At least one section of the Complaint also suffers from a ripeness issue because it targets regulations that do not even exist in Minnesota. Compl. ¶¶136-139. This aspect of the Complaint likewise seeks an improper advisory opinion.

While the Plaintiffs may disagree with California's standards for 2026 and beyond, Minnesota has not adopted those provisions, as the Complaint is forced to admit. *Id*. As the Minnesota Court of Appeals recently confirmed, MPCA will engage in further rulemaking before any such provisions are adopted in Minnesota. *Minn. Auto. Dealers Ass'n ("MADA") v. MPCA*, 986 N.W.2d 225, 234 (Minn. Ct. App. 2023).[12] The Complaint does not even allege that there is a proposal for Minnesota to adopt the California regulations for model years 2026

---

[12] This case is not final as discussed in Section IV, *infra*.

and beyond. There is no "real, substantial controversy" here. *Neb. Pub. Power Dist.*, 234 F.3d at 1037.

And even if a rulemaking were underway (which is not the case) the case would not be ripe or actionable without final agency action. *Murray Energy Corp. v. EPA*, 788 F.3d 330, 333-34 (D.C. Cir. 2015); *Lane v. U.S. Dept. of Ag.*, 187 F.3d 793, 795 (8th Cir. 1999) (issue not ripe for judicial review until final agency action). This Court has already addressed precisely this issue, finding that a challenge to MPCA action is simply not ripe until a rule is finalized. *MADA v. MPCA*, 520 F. Supp. 3d 1126 (D. Minn. 2021). That case is directly on point here. The Complaint should be dismissed as to its improper attack on potential future regulations. *Id.*; Fed. R. Civ. P. 12(b)(1).

## III.    THIS COURT DOES NOT HAVE JURISDICTION OVER COUNT II BECAUSE SECTION 307 OF THE CLEAN AIR ACT REQUIRES THE CLAIM TO BE RAISED IN A UNITED STATES CIRCUIT COURT OF APPEALS.

This Court lacks subject matter jurisdiction over Plaintiffs' equal sovereignty claim because the claim is a direct challenge to EPA's final action restoring a Clean Air Act Section 209(b) waiver to California. Ex. A.

Under Section 307, challenges to EPA actions must be filed directly in a federal Court of Appeals within 60 days of publication. 42 U.S.C. § 7607(b)(1).

> [A]ny other final action of the Administrator under this chapter . . .which is locally or regionally applicable may be filed only in the United States Court of Appeals for the appropriate circuit.

> Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination.

> Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation . . .

*Id*. Moreover, in considering the reach of Section 307's jurisdictional requirements, courts should consider whether the "practical objective" of a complaint is to target agency action regardless of how the complaint is framed. *Cal. Dump Truck Owners Ass'n v. Nichols*, 784 F.3d 500, 506 (9th Cir. 2015) (Section 307 applies to claims that "effectively, if not facially" challenge EPA final action); *State of Mo. v. United States*, 109 F.3d 440, 441 (8th Cir. 1997) (recognizing that constitutional challenges may nonetheless embed attacks on EPA action).

Count II does not attack Minnesota's Rule, but rather challenges EPA's decision to grant a Section 209(b) waiver to California <u>as applied</u> to the Minnesota Rule. Compl. ¶¶ 122, 128, 133 n.6, 162-173, 169-170.[13] The Complaint further attacks federal law, alleging that the federal government did not respect the equal sovereignty of the states in passing Section 209(b). Doc. 20 (notice of constitutional

---

[13] While not dispositive of a district court's lack of jurisdiction, EPA expressly determined that its decision to reinstate California's Section 209)(b) waiver has "nationwide scope or effect." Ex. A (87 Fed. Reg. at 14379). Thus, under Section 307(b), jurisdiction should lie with the D.C. Circuit Court of Appeals.

challenge); *see also* Compl. ¶ 163 ("The U.S. Constitution requires that the federal government respect the equal sovereignty of all states."). It goes on to complain that Section 209(b) allegedly "grant[s] California (and only California) the authority to set emission standards different from those set by the federal government." Compl. ¶ 168. Further, Plaintiffs allege that "Section 209(b) is … unconstitutional in all of its applications" and that "[a]t a minimum, Section 209(b) is unconstitutional <u>as applied</u> to [GHG and ZEV standards]." Compl. ¶¶ 169, 170 (emphasis added).

But Section 209(b) can be "applied" only by the EPA Administrator, not Minnesota. 42 U.S.C. § 7543(b) ("The Administrator shall …"). And the only active application of Section 209(b) is EPA's 2022 decision to reinstate California's waiver. Ex. A. Count II does not allege that Minnesota, in passing the Rule, conferred special powers upon some other state. Compl. ¶¶ 162-173.

Because Count II requires an adjudication of EPA's 2021 waiver reinstatement, Ex. A, this case must be brought in a federal appellate court (and in this case, the D.C. Circuit). 42 U.S.C. § 7607(b)(1). No matter which circuit court of appeals may be proper, jurisdiction is <u>not</u> proper in the district courts, so this Court should dismiss Count II.

Note that granting dismissal on this basis does not deprive the Plaintiffs of their day in Court. Most of the Plaintiffs here are intervenors in *Ohio v. EPA*—

which was timely filed in accordance with Section 307—as discussed in the next

Section.

## IV. EVEN IF THIS COURT WERE NOT INCLINED TO DISMISS THE CASE, IT SHOULD STAY THE PROCEEDINGS GIVEN THE PENDENCY OF TWO OTHER CASES.

Even if the Court were not inclined to resolve the issues presented in this

motion at this time, the Court should await the outcome of two pending and

potentially-dispositive cases before proceeding.

The first is a case that a group of Minnesota auto dealers brought

challenging the legality of the Rule under Minnesota law in Minnesota state

court.[14] *MADA v. MPCA*, 986 N.W.2d 225 (Minn. App. 2023). There, petitioner

challenged the rule in the Minnesota Court of Appeals, which declared the Rule

valid. *Id*. Earlier this year, the auto dealers filed a petition for further review, and

the Minnesota Supreme Court has not yet decided whether it will hear the case.

*MADA*, No. A22-0796. The next Special Term dates are March 16 and 31, 2023.

The second is a case involving the same Plaintiffs[15] as in this case seeking to

invalidate EPA's decision to reinstate California's Section 209(b) waiver. *Ohio*, No.

---

[14] Even before the state-court case, the same Plaintiff challenged MPCA's rulemaking before it was final, with this Court concluding that the case was not ripe, and that Plaintiffs' alleged injuries were not traceable to the Rule. *MADA v. MPCA*, 520 F. Supp. 3d 1126 (D. Minn. 2021).
[15] Minnesota Service Station & Convenience Store Association is the only Plaintiff that is not also an intervenor in *Ohio v. EPA*.

22-1081; *see also* Ex. A. There, the petitioners raise the same arguments as Plaintiffs

do in this Court. *See* Initial Brief for Private Petitioners at 25 (EPCA preemption),

53 (equal sovereignty), *Ohio v. EPA,* No. 22-1081 (Oct. 24, 2022), ECF No. 1970360.

Briefing is complete and oral argument is scheduled in September. Order at 1,

*Ohio*, No. 22-1081 *(*Mar. 13, 2023), ECF No. 1989839.

Given these pending cases and the status of this litigation, all of the factors

that a court should consider weigh in favor of granting the stay as a matter of

discretion:

> In determining whether to grant a stay, the Court considers the
> following factors:
>
> (1) whether a stay would unduly prejudice or present a clear tactical
> disadvantage to the non-moving party;
>
> (2) whether a stay will simplify the issues in question and trial of the
> case; and
>
> (3) whether discovery is complete and whether a trial date has been
> set.

*Cent. States Se. & Sw. Areas Pension Fund v. Lakeville Transportation, Inc.*, No. 18-CV-

1863-SRN-KMM, 2021 WL 1661239, at *1 (D. Minn. Apr. 28, 2021) (quoting *Card*

*Tech. Corp. v. DataCard Corp.*, No. 05-cv-2546 (MJD/SRN), 2007 WL 551615 at *3 (D.

Minn. Feb. 21, 2007). The Court has substantial discretion to weigh these factors

based on the unique circumstances of the case before it and to decide whether a

stay is appropriate using its inherent power to manage litigation. *See Honeywell*

*Intern., Inv. V. Furuno Elec. Co. Ltd.*, No. 09-cv-3601, 2010 WL 3023529 at *2 (D.
Minn. July 30, 2010) (citations omitted).

The first factor favors a stay. A stay would not unduly prejudice or present
a clear tactical disadvantage to the non-moving party in this case. The Rule was
promulgated in the summer of 2021. The Plaintiffs here also did not participate in
the MPCA's rulemaking process during the comment period or at the public
hearing, nor did they seek administrative review of MPCA's rulemaking in state
court. Plaintiffs waited to file the instant complaint until mid-2023, nearly two
years after the Rule's promulgation.  At this point the automakers' production and
sales plans are already set, Compl. ¶ 65, and will need to meet the currently-
applicable federal regulations for model year 2025. Fact Section I, *supra*. There has
been no rush to have Plaintiffs' claims considered, and there is no rush now that
they have finally brought their Complaint. Indeed, they are already litigating in
*Ohio v. EPA*.

The second factor favors a stay because it will allow the other cases to
potentially simplify the issues here. Defendants are confident that the Rule will
survive review should the Supreme Court grant MADA's petition. But if the
Supreme Court takes the case, the constitutionality of the rule will be considered,
with the petitioner asserting it should be declared unlawful. *MADA*, No. A22-0796.

If petitioner prevails on its state-law claims (again, without conceding that it would), this Court need not consider the Rule's validity under any federal law.

Similarly, Minnesota is confident in the arguments that it submitted to the D.C. Circuit Court of Appeals on the equal sovereignty doctrine (Count II here).[16] But if Plaintiffs here succeed in having the D.C. Circuit Court of Appeals consider (and resolve) their equal sovereignty claim against EPA, it would dispense with this Court's need to consider the issue because it would moot Minnesota's ability to enforce the Rule. *Let Them Play MN v. Walz*, 556 F. Supp. 3d 968, 976-978 (D. Minn. 2021); *Ali v. Cangemi*, 419 F.3d 722, 723-24 (8th Cir. 2005).

The third factor favors a stay because discovery is not yet underway.

Because all three factors favor a stay, the Court should impose one if it does not dismiss the complaint outright (as it should based on Sections I-III, *supra*).

---

[16] As is clear from the briefing submitted to the D.C. Circuit, the Energy Policy and Conservation Act preemption claim (Count I here) is not properly before that court. *See* Initial Brief of Respondents at 91-96, *Ohio*, No. 22-1081 (D.C. Cir. Oct. 24, 2022), EFC No. 1970360.

## CONCLUSION

For all of the foregoing reasons, this Court should GRANT the motion to dismiss or, in the alternative, enter a stay.

Respectfully Submitted,

Dated: May 15, 2023

**MINNESOTA ATTORNEY GENERAL**

*/s/ Peter N. Surdo*

Peter N. Surdo, MN Atty. Reg. No. 0339015
Special Assistant Attorney General
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101
(651)757-1061
peter.surdo@ag.state.mn.us

Joseph T. Heegaard
Special Assistant Attorney General
Atty. Reg. No. 0401544
445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101
(651) 583-6667
joseph.heegaard@ag.state.mn.us

*Attorneys for Katrina Kessler in her official capacity as Commissioner of the MPCA, Peter Tester, in his official capacity as Deputy Commissioner of MPCA, Frank Kohlasch in his official capacity as Assistant Commissioner of MPCA, Kirk Koudelka in his official capacity as Assistant Commissioner of MPCA, Dana Vanderbosch in her official capacity as Assistant Commissioner of MPCA, and Timothy J. Walz in his official capacity as Governor of the State of Minnesota*