# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Clean Fuels Development Coalition, Minnesota Soybean Growers Association, ICM, Inc., Minnesota Service Station & Convenience Store Association, and National Association of Convenience Stores,<br><br>    Plaintiffs,<br><br>v.<br><br>Katrina Kessler, in her official capacity as Commissioner of the Minnesota Pollution Control Agency (MPCA); Peter Tester, in his official capacity as deputy Commissioner of MPCA; Frank Kohlasch, in his official capacity as Assistant Commissioner of MPCA; Kirk Koudelka, in his official capacity as Assistant Commissioner of MPCA; Dana Vanderbosch, in her official capacity as Assistant Commissioner of MPCA; and Timothy J. Walz, in his official capacity as Governor of the State of Minnesota;<br><br>    Defendants. | Case No. 23-cv-610 (KMM/DTS)<br><br><br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS OR STAY** |

In this lawsuit, plaintiffs challenge emissions rules issued by the Minnesota Pollution Control Agency (MPCA) that govern greenhouse gas emissions for motor vehicles and take effect at the beginning of 2024 (for model year 2025). The defendants filed a motion to dismiss the plaintiffs' claims for lack of jurisdiction, or, in the alternative, to stay the proceedings during the pendency of a closely related case before the U.S. Circuit Court of Appeals for the

1

D.C. Circuit. [Dkt. No. 30.] Pursuant to its broad discretion to manage its docket, the Court finds that this case should be stayed.

**I.     BACKGROUND**

    **A.  Regulatory Background**

The plaintiffs assert that Minnesota's new emissions rules are preempted by two statutes. The first is the Clean Air Act (CAA), which requires the Environmental Protection Agency (EPA) to set national vehicle emissions standards. *See* 42 U.S.C. § 7521(a). The CAA contains an express preemption provision, Section 209(a), which preempts states from developing their own emissions standards. *Id.* at § 7543(a). Section 209(b), however, provides an exception for California and allows it to apply for a waiver of preemption from the EPA because California had its own emissions program in place when Congress enacted the CAA. *See id.* at § 7543(b). If the EPA grants a waiver to California, Section 177 of the Act allows other states to adopt the California standards without running afoul of the preemption provision, as long as the standards they adopt are identical to California's and provide at least two years lead time to automakers. *Id.* at § 7507. Today, 17 states and the District of Columbia have adopted some or all of California's emission standards for vehicles, and Minnesota is one such state. [Defs.' Mem. 5, Dkt. No. 38.]

Both the EPA's implementation of the CAA, and whether California is granted a waiver, depend in large part upon the president in office. [*See id.* at 5–7; *see also* Pls.' Opp'n 6–7, Dkt. No. 44.] The EPA initially denied California's request for a CAA preemption waiver, but after a change in administration, the EPA granted it in 2009. In 2012, the EPA promulgated greenhouse gas standards that essentially harmonized the national standards with

California's.  But then in 2019, the EPA rescinded its previously-granted waiver to California and rolled back the stringency of the national greenhouse gas standards for model years 2021–25.  These actions were challenged in court, but before the D.C. Circuit weighed in on them, a new administration took office and directed the EPA to reconsider those actions.  The EPA has since restored parity with California's standards for model year 2025 vehicles.  [Defs.' Mem. 7–8.]

The second statute at issue in this case is the Energy Policy and Conservation Act of 1975 (ECPA), 49 U.S.C. § 32901 et seq., which directs the National Highway Traffic Safety Administration to set national fuel-economy standards.  [Pls.' Opp'n 4, Dkt. No. 44.]  Like the CAA, the EPCA contains an express preemption provision, prohibiting any state from "adopt[ing] or enforc[ing] a law or regulation related to fuel economy standards or average fuel economy standards."  49 U.S.C. § 32919(a).  Unlike the CAA, however, the EPCA does not contain an exception to its express preemption clause for California or states that adopt California's standards.  Under some administrations, the National Highway Traffic Safety Administration has opined that EPCA expressly and impliedly preempts all vehicle emission standards promulgated by states because they relate to fuel economy standards.  [Pls.' Opp'n 7–8, Dkt. No. 44.]  But under the current administration, the agency has disavowed that view.

## B. Factual Background

Minnesota law broadly requires the MPCA to protect public health and the environment from air pollution.  Minn. Stat. § 116.07, subd. 2.  The agency began the rulemaking process in 2019 and published proposed rules in December 2020.  These rules incorporate by reference California's low-emission vehicle (LEV) and zero-emission vehicle

(ZEV) standards, but the agency stated that any "major updates" to California's rules would not automatically be adopted into Minnesota's program and would need to be considered through rulemaking. The rules set emission standards for new passenger cars, light-duty trucks, and medium-duty passenger vehicles. Adopted by the agency in July 2021, the rules take effect on January 1, 2024 for vehicle model year 2025. [Defs.' Mem. 10–11; *see also* Compl. ¶ 130, Dkt. No. 1.]

Plaintiffs sued in March 2023, seeking to enjoin the enforcement of Minnesota's LEV and ZEV rules. Count I of their complaint alleges that the Minnesota rules are preempted by EPCA, and Count II alleges that the Minnesota rules are preempted by the CAA. As for EPCA preemption, the plaintiffs assert that state emissions rules are "inextricably connected to fuel-economy standards" and thus violate EPCA's express preemption provision. [Compl. ¶¶ 141–45 (citing 49 U.S.C. § 32919(a)).] As for CAA preemption, the plaintiffs assert that Section 209(b) of the CAA—which allows the EPA to give a preemption waiver to California and except other states that have adopted California's standard from preemption—is unconstitutional because it violates the equal sovereignty doctrine. As a result, plaintiffs argue that Minnesota's rules fall within the CAA's express preemption provision and cannot stand. [Compl. ¶¶ 162–73.]

Defendants moved to dismiss the complaint, primarily arguing that the plaintiffs' injuries are not traceable to the Minnesota rules and are not capable of redress by this Court, and that the Court lacks jurisdiction over Count II because Section 307 of the CAA requires challenges to final EPA actions be filed in a United States Court of Appeals. [*See* Dkt. Nos.

4

30, 38.] In the alternative, the defendants moved for the Court to stay the litigation pending the resolution of a markedly similar case before the D.C. Circuit.[1]

## II.  DISCUSSION

"A district court has broad discretion to stay proceedings when appropriate to control its docket." *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006) (citing *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). This power is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The party seeking the stay "bears the burden of establishing its need." *Clinton*, 520 U.S. at 708. Factors that courts are to consider include (1) whether a stay would "simplify the issues in question," (2) how far along the case is, that is, "whether discovery is complete and whether a trial date has been set," and (3) whether a stay would "unduly prejudice" the non-moving party. *Card Tech. Corp v. DataCard Corp.*, Civil No. 05-2546 (MJD/SRN), 2007 WL 551615, at *3 (D. Minn. Feb. 21, 2007). Also relevant are "the conservation of judicial resources" and avoiding "duplicative efforts and wasted resources of the parties." *Tovar v. Essentia Health*, 342 F. Supp. 3d 947, 956–57 (D. Minn. 2018) (citation omitted). "The Court has substantial discretion to weigh these factors based on the unique circumstances of the case before it and to decide whether a stay is appropriate." *Cent. States Se. & Sw. Areas Pension Fund v. Lakeville*

---

[1] Initially, the defendants also sought to have the Court stay the case pending the resolution of a state-court lawsuit challenging the legality of Minnesota's rules under the Minnesota Constitution. [*See* Defs.' Mem. 32 (citing *Minn. Auto. Dealers Ass'n v. Minn Pollution Control Agency*, 986 N.W.2d 225 (Minn. Ct. App. 2023).] But the day after the defendants filed their memorandum supporting their motion, the Minnesota Supreme Court denied the petition for review in the *MADA* case, and defendants have abandoned that basis for seeking a stay. *See* Order at 1, *Minn. Auto. Dealers Ass'n*, No. A22-0796 (Minn. May 16, 2023).

*Transp., Inc.*, Case No. 18-cv-1863-SRN-KMM, 2021 WL 1661239, at *1 (D. Minn. Apr. 28, 2021).

Here, the Court finds that the circumstances of this case weigh in favor of a stay. The Court assigns significant weight to the fact agreed to by all parties that a decision from the D.C. Circuit in *Ohio v. EPA*, No. 22-1081 (D.C. Cir. May 12, 2022), has the potential to narrow and simplify the issues in this case. There, the very same plaintiffs as here joined other petitioners to challenge the preemption waiver the EPA granted to California under Section 209(b) of the CAA.[2] The same arguments have been raised in that case, namely that California's state emissions standards are preempted by EPCA and that the CAA's preemption waiver scheme is unconstitutional and violates the equal sovereignty doctrine. [Defs.' Mem. 32–33.] Thus, the same underlying constitutional issues and questions of law are before the D.C. Circuit, even if the focus is broader than the impact of these issues in Minnesota. Briefing is complete, and oral argument is scheduled for September 15, 2023. Order at 1, *Ohio v. EPA*, No. 22-1081 (August 18, 2023).[3] If the D.C. Circuit agrees with the plaintiffs in *Ohio v. EPA* that the CAA's preemption scheme is unconstitutional, thus invalidating California's preemption waiver and its emissions standards along with it, this would necessarily invalidate

---

[2] Every Plaintiff in this case is also a party to the *Ohio v. EPA* case except for the Minnesota Service Station & Convenience Store Association.

[3] In *Texas v. EPA*, No. 22-1031 (D.C. Cir. Feb. 28, 2022), several of the plaintiffs in this case challenge the federal emissions rules promulgated by the EPA for model years 2023 and beyond. Oral argument is scheduled for September 14, 2023. Order at 1, *Texas v. EPA*, No. 22-1031 (June 23, 2023), ECF No. 2004784. The resolution of that case, too, has the potential to simplify issues in this litigation, as whether the federal emissions standards are invalidated impacts defendants' traceability and redressability arguments in the pending motion before this Court.

the legal basis for Minnesota's rules at issue in this case. At a minimum, the D.C. Circuit's decision will influence the Court's analysis in this case. Given the significant overlap in issues between *Ohio v. EPA* pending before the D.C. Circuit and this case, the undersigned finds the risk of contradictory rulings and lack of clarity to be grave. In fact, plaintiffs affirmatively argued at the hearing that even if the D.C. Circuit does not rule in their favor and upholds the CAA's preemption scheme, they will still ask this Court to invalidate it as to Minnesota. If this is the case, this Court finds it prudent to allow the D.C. Circuit to weigh in first on these heady constitutional issues, given its smaller docket, exclusive jurisdiction to consider nationally applicable final actions by the EPA, and the reality that the issues will be more extensively briefed as thirty-five states are participating in *Ohio v. EPA*. In these circumstances, the Court concludes that "a stay would conserve judicial resources, clarify the law, and aid the court in making a decision on the merits." *Frable v. Synchrony Bank*, 215 F. Supp. 3d 818, 821 (D. Minn. 2016) (granting motion to stay case pending a decision by the D.C. Circuit in a case with overlapping issues).

The case before this Court is also in its nascent stages, which counsels in favor of granting a stay. The petitioners, including the plaintiffs in this case, sought review from the D.C. Circuit in May 2022, nearly a year before filing this action in the District of Minnesota. Discovery has not started in this case, there is no scheduling order to amend, and a trial date has not been set.

And while the Court is mindful of the potential for prejudice to plaintiffs, who argue their injuries will mount with each day that Minnesota's rules are not invalidated, the Court finds that any prejudice is minimal for two reasons. First, the federal emissions standards that

7

are comparably stringent to the ones Minnesota adopted, which the plaintiffs do not challenge in this case, will result in similar harms to the plaintiffs in Minnesota. Though defendants make this point in challenging the redressability of plaintiffs' injuries, the Court also sees it as a factor mitigating any prejudice to the plaintiffs from a stay. Second, the reality of the lead time of the auto manufacturing industry means that a temporary stay from this Court is unlikely to result in any incremental injury to plaintiffs because they admitted in their complaint that as of March 2023, "automakers either already have finalized, or will imminently finalize, their production and sales plans for their model year 2025 vehicles." [Compl. ¶ 65.] Thus, staying this case pending a decision from the D.C. Circuit in *Ohio v. EPA* will have little, if any, impact on injuries traceable to model year 2025 vehicles, which are the first set vehicles that will be affected when Minnesota's rules to take effect in January 2024. For the foregoing reasons, the Court finds it appropriate to stay this case during the pendency of the *Ohio v. EPA* case before the D.C. Circuit.

### III. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED that:**

1. Defendants' Motion to Dismiss or Stay [Dkt. No. 30] is granted in part. These proceedings are stayed until further Order of this Court.

2. The parties are required to file letters on the docket within 7 days of any decision from the D.C. Circuit in *Ohio v. EPA*, No. 22-1081.

3. The parties are required to file letters on the docket within 7 days of any decision from the D.C. Circuit in *Texas v. EPA*, No. 22-1031.

Date: August 24, 2023                                         *s/ Katherine Menendez*
                                                              Katherine Menendez

United States District Judge