# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

CLEAN FUELS DEVELOPMENT
COALITION, MINNESOTA
SOYBEAN GROWERS
ASSOCIATION, ICM, INC.,
MINNESOTA SERVICE STATION &
CONVENIENCE STORE
ASSOCIATION, and NATIONAL
ASSOCIATION OF CONVENIENCE
STORES,

    Plaintiffs,

  v.

KATRINA KESSLER, in her official
capacity as Commissioner of the
MINNESOTA POLLUTION
CONTROL AGENCY (MPCA); PETER
TESTER, in his official capacity as
Deputy Commissioner of MPCA;
FRANK KOHLASCH, in his official
capacity as Assistant Commissioner of
MPCA; KIRK KOUDELKA, in his
official capacity as Assistant
Commissioner of MPCA; DANA
VANDERBOSCH, in her official
capacity as Assistant Commissioner of
MPCA; and TIMOTHY J. WALZ, in his
official capacity as Governor of the State
of Minnesota,

    Defendants.

Case No. 23-cv-00610-KMM-DTS
The Honorable Katherine Menendez

MEMORANDUM  OF  LAW  IN
SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

PROCEDURAL BACKGROUND AND AMENDED COMPLAINT ............................ 4

REGULATORY BACKGROUND ........................................................................... 7

      A.    The Decades-Long Interplay Between Dual Federal and State Standards ............................................................................... 7

      B.    Minnesota Rule's Standards, the 2025 ZEV Sunset, and the 2025 GHG Flatline ............................................................... 13

LEGAL STANDARDS ....................................................................................... 15

ARGUMENT ................................................................................................... 17

I.     THE AMENDED COMPLAINT SHOULD BE DISMISSED AS MOOT. ............................ 18

      A.    Plaintiffs' Challenge to the ZEV Standard is Moot Because the 2025 Model Year has Lapsed. ............................................ 20

      B.    Plaintiffs' Challenge to the GHG Standard is Moot Because the Rule's Emissions Requirements Flatlined at 2025 Levels, Whereas Federal Regulations are now More Stringent than the Rule. ................................... 21

II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM. ................................................................ 22

      A.    Even if the ZEV Challenge Were Not Moot, the First-Year Credit Allotment Eliminates Plaintiffs' Standing at the Outset. ............................ 24

      B.    Even if the GHG Challenge Were not Moot, Plaintiffs Still Lack Standing; *Diamond Energy* Does Not Apply. .................................... 26

III.   THE AMENDED COMPLAINT DOES NOT REACH CRITERIA POLLUTION STANDARDS ................................................................................... 31

CONCLUSION ................................................................................................ 32

i

# TABLE OF ABBREVIATIONS

ACCI – Advanced Clean Cars I

ACCII – Advanced Clean Cars II

EPA – Environmental Protection Agency

GHG – Greenhouse Gas

LEV – Low-Emissions Vehicle

MPCA – Minnesota Pollution Control Agency

SONAR – Statement of Need and Reasonableness

ZEV – Zero-Emissions Vehicle

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), Defendants Katrina Kessler, in her official capacity as Commissioner of the Minnesota Pollution Control Agency (MPCA); Peter Tester, in his official capacity as Deputy Commissioner of MPCA; Frank Kohlasch, in his official capacity as Assistant Commissioner of MPCA; Kirk Koudelka, in his official capacity as Assistant Commissioner of MPCA; Dana Vanderbosch, in her official capacity as Assistant Commissioner of MPCA; and Timothy J. Walz, in his official capacity as Governor of the State of Minnesota (collectively, Defendants or the State) bring this motion to dismiss the Amended Complaint (Dkt. 63), filed by Clean Fuels Development Coalition, Minnesota Soybean Growers Association, ICM, Inc., Minnesota Service Station & Convenience Store Association, and National Association of Convenience Stores (collectively, Plaintiffs), or in the alternative for a more definite statement of the same under Rule 12(e).

## INTRODUCTION

In May 2023 Plaintiffs initiated this case, alleging Minnesota Clean Cars Rule (the Rule) is preempted, insofar as it contains a zero-emissions vehicle (ZEV) standard and a greenhouse gas (GHG) standard. Minn. R. 7023.0250, 7023.0300. Plaintiffs alleged that these standards would require automakers to sell cleaner vehicles in Minnesota than they otherwise might, which in turn would allegedly cause Minnesotans to demand less liquid fuel and fewer internal-combustion engine repairs. Dkt 1. ¶¶ 61-90; Minn. R. 7023.0150-

.0300 (Minnesota Rule or Rule). The Amended Complaint also adds a description of the Rule's criteria pollutant standard.[1] These claims should be dismissed for three reasons.

First, the case is moot as to both ZEV and GHG standards. Time has passed since this case first began, and the relevant factual and legal landscape for both standards has evolved to render Plaintiffs' claims moot. As of today, Plaintiffs no longer have a claim (even assuming they once did). Specifically, Plaintiffs' challenge to the ZEV standard is now moot because its only effective model year, 2025, has now lapsed. And Plaintiffs' challenge to the GHG standard is moot because their complaint fails to account for more-stringent federal standards that are now in effect for (1) the 2026 model year, and (2) the 2027 and subsequent model years. The case as to GHG standards is now moot because the currently-applicable federal standards' stringency eclipses anything the Minnesota Rule would have otherwise required of manufacturers which moots Plaintiffs' GHG claim. This Court should dismiss on mootness.

Second, even if the ZEV and GHG challenges were not moot, Plaintiffs do not have standing (and never did have standing) to challenge either the ZEV or GHG standards as

---

[1] The GHG and criteria pollution standards fall under the Low-Emissions Vehicle Standards (LEV) portion of the Rule. Minn. R. 7023.0250. Subpart 3(A) covers nonmethane organic gasses (NMOG) and nitrogen oxides (NOx), and other pollutants. Minn. R. 7023.0250, subp. 3(A); Minn. R. 7023.0150, subp. 2 (incorporating, inter alia, Cal. Code Regs. Tit. 13, § 1961.2 covering carbon monoxide, formaldehyde, and particulate matter). Many of these are defined "criteria pollutants" under the Clean Air Act. *See* California Air Resources Board, *Criteria Pollutants*, https://ww2.arb.ca.gov/criteria-pollutants. A separate subpart, subpart 3(B), covers the GHG standard. Minn. R. 7023.0250, subp. 3(B) incorporating Cal. Code Regs. Tit. 13, § 1961.3 covering greenhouse gasses.

of the date this case was filed. As written, the ZEV standard included a credit allotment for regulated automakers to receive one year's worth of compliance credits. But a subsequent change in the Rule added a sunset date of model year 2025, meaning that Minnesota's ZEV standard started and ended with model year 2025. That means that ever since this case was first filed, automakers did not need to deliver any zero-emission cars into the state to comply. Thus, even if the case were not moot, the ZEV standard does not cause any injury and Plaintiff's requested relief of setting aside the Rule would not have any effect on automaker's conduct for model year 2025.

Regarding GHG standards, the Amended Complaint is tellingly thin on specific allegations of harm, causation, and redressability. Because the Amended Complaint does not plausibly allege—and the State disputes—that the Rule will cause less fuel to be consumed, or that setting it aside will ensure greater fuel consumption, it does not establish standing. To skirt that deficiency, the Amended Complaint relies on a vastly overstated version of the recent Supreme Court decision in *Diamond Energy* which does not control here. *Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100 (2025). That case involved a different state program, on a different timeline for different model years, and different rules of procedure than apply here. Thus, the Court should also dismiss on jurisprudential grounds for lack of standing.

Third, the Court should enter an Order clarifying that the Amended Complaint does not reach the Rule's criteria pollution standard. The parties have reached agreement on this point. A Court Order documenting this agreement is an acceptable resolution.

In short, this case should be dismissed because the Amended Complaint is moot and Plaintiffs lack standing as to the ZEV and GHG standards, and because the criteria pollution standard is not at issue.

## PROCEDURAL BACKGROUND AND AMENDED COMPLAINT

On March 13, 2023 Plaintiffs filed their original complaint. Dkt. 1 (Original Complaint), challenging the GHG and ZEV programs. *Id*. The Original Complaint brought two counts: preemption under the Energy Policy and Conservation Act (EPCA) and the equal sovereignty doctrine.

The State moved to dismiss on the grounds that Plaintiffs did not have standing, invoking theories of both traceability and redressability. Dkt. 38 at 16–24. The State also argued that Plaintiffs had not adequately alleged a case or controversy to support their equal sovereignty challenge and that the District of Minnesota was not an appropriate forum for such a challenge under the Clean Air Act. *Id*. at 25–32. In the alternative, the State suggested that the Court should enter a stay given two cases pending at the D.C. Circuit Court of Appeals that were already much more advanced. *Id*. at 33–35. On August 24, 2023, this Court issued an Order staying this case (the "Stay Order"). Dkt. 51.

Those two federal cases are ongoing. One, *Texas v. EPA*, No. 22-1031 (D.C. Cir. Feb. 28, 2022), presents a challenge to federal standards for greenhouse gas (GHG) emissions. *Texas* is currently in abeyance given EPA's proposal to rescind federal GHG

4

emissions standards altogether.[2][3] Given the lack of any resolution in *Texas v. EPA* or any final agency action by EPA to rescind the federal GHG standards (for which further litigation is all but guaranteed), the current federal GHG standards are in effect and are relevant to this motion. In fact, because standing is judged at the time of filing, those standards apply to this motion even if they are later rescinded.

The other case, *Ohio v. EPA*, was brought by nearly the same coalition of Plaintiffs as in this case[4] (plus other petitioners including industry interests and other states). Petitioners there collectively advanced many of the same claims including EPCA preemption and equal sovereignty. *Ohio v. EPA* challenged EPA's decision to reinstate a Clean Air Act Section 209(b) waiver for certain elements of California's vehicles emissions program. In 2024, the D.C. Circuit rejected State Petitioners' equal sovereignty challenge and held those petitioners lacked standing to bring other challenges; it also held that industry petitioners had likewise not demonstrated standing. *Ohio v. EPA*, 98 F.4th 288 (D.C. Cir. 2024), *cert. granted in part sub nom. Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 145 S. Ct. 980 (2024), and *cert. denied*, 145 S. Ct. 994 (2024), and

---

[2] Ex. N (Reconsideration of 2009 Endangerment Finding and Greenhouse Gas Vehicle Standards, 90 Fed. Reg. 36,288 (proposed Aug. 1, 2025)).

[3] All "Ex." cites are to Exhibits in the Declaration of Catherine Rios-Keating, filed contemporaneously with this memorandum.

[4] Minnesota Service Station & Convenience Store Association is the only Plaintiff that is not also an intervenor in *Ohio v. EPA*.

*rev'd and remanded sub nom. Diamond Alternative Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100 (2025).

*Ohio v. EPA* went to the United States Supreme Court as *Diamond Energy v. EPA*, decided last term. 606 U.S. at 125–126. The Supreme Court reviewed only the industry-petitioner standing aspect of the D.C. Circuit's 2024 decision, reversing and remanding for further proceedings. *Id.* Those proceedings are currently stayed, and the parties are to submit motions to govern on December 5.

On August 22, 2025, this Court, noting the ongoing abeyance status of *Texas v. EPA*, asked the parties to brief whether the stay should be lifted. Dkt. 59. The parties filed their respective positions as instructed. Dkts. 60, 61. Plaintiffs committed that if the Court were to lift the stay, they would simplify the issues to be presented. Dkt. 61. The Court lifted the stay with instructions for the Plaintiffs to file an amended complaint and for the State to answer or otherwise respond. Dkt. 62.

On October 15, 2025, Plaintiffs filed their Amended Complaint. Dkt. 63 (Amended Complaint); Dkt-63-1 (redlined Amended Complaint). The Amended Complaint drops the equal sovereignty claim (Dkt. 63-1 at 47–49), but adds significant detail around the GHG standards. *E.g.*, Dkt. 63-1 at 37–43 (new ¶¶ 91–114). And even though Plaintiffs had at one time entertained dropping their challenges to the ZEV standard (Dkt. 60 at fn3), Plaintiffs instead updated the Amended Complaint with substantial content. Dkt. 63-1 at ¶¶ 5, 11–13, 102, 113, 119. Plaintiffs also added a single paragraph describing the criteria pollution standard. Dkt. 63 ¶ 90; Dkt. 63-1 at 37 (new ¶ 90).

The Amended Complaint asks the Court to declare Minnesota Rules 7023.0300 (covering ZEV) and 7023.0250 (covering both criteria pollution and GHGs)—invalid in their entirety. Dkt. 63 at 34 (Prayer for Relief).

The State brings this Rule 12 motion to dismiss the Amended Complaint.

## REGULATORY BACKGROUND

### A. The Decades-Long Interplay Between Dual Federal and State Standards

Dual state and federal regulatory schemes have applied to new vehicle emissions under the Clean Air Act for more than half a century, with relevant standards weaving into—and out of—alignment over time.

Both regulatory schemes are subject to EPA decision-making. For federal emissions standards, EPA issues regulations through rulemaking under the Clean Air Act. By default, these federal standards apply throughout the country except for a carve-out for California under Section 202(a), 42 U.S.C. § 7521(a), of the Clean Air Act. 42 U.S.C. § 7521(a). California may enforce its state emission standards if EPA issues a Clean Air Act waiver of preemption, which it must do if certain conditions are met. 42 U.S.C. §§ 7543(b)(1). The California standards apply in California and in any other state that elects to adopt them. 42 U.S.C. § 7507. More specifically:

- Section 202 of the Clean Air Act requires EPA to set vehicle emissions standards. 42 U.S.C. § 7521(a). It does so via EPA rulemaking. Unless a state chooses otherwise (discussed below), these national standards will apply by default.

- Section 209(a) generally preempts states from developing their own standards. 42. U.S.C. § 7543(a).

- Section 209(b) provides a preemption exception for any state that already had its own program in place at the time it was enacted (i.e., California). 42 U.S.C. § 7543(b). California may apply for, and EPA generally must issue, a waiver of preemption upon EPA's determination that limited conditions for denial are not present. *Id*.

- Section 177 provides that any state with qualifying plan provisions approved by EPA may adopt the California standards without any further application to, or approval from, EPA; the only requirements are that the standards must be identical to California's and provide at least two years' lead time to automakers. 42 U.S.C. § 7507.

Since 1968, California has received numerous Section 209(b) waivers from EPA, including for its GHG and ZEV programs. Dkt. 63 ¶ 72; Dkt. 1 ¶ 110; Ex. A (Reconsideration of Previous Waiver Withdrawal, 87 Fed. Reg. 14332, 14333 n.5 (collecting history and citation of EPA's prior waivers issued for California's standards) (Mar. 14, 2022)); *Diamond Energy*, 606 U.S. at 104–07 (history of waiver decisions).

Both federal and state GHG standards are expressed in terms of fleet-wide emission averages, meaning that automakers comply with them by demonstrating that the fleet of vehicles sold into the state comply with applicable limits. While the federal government has developed GHG standards, it has not adopted any equivalent to the state ZEV standard.

Today, 17 states including Minnesota, plus the District of Columbia, have adopted some or all of California's standards; known collectively as "Section 177 States." Together with California, the Section 177 States compromise approximately 40 percent of the national market. Dkt. 63 ¶ 80; Dkt. 1 ¶ 111; *California Air Resources Board*, STATES THAT HAVE ADOPTED CALIFORNIA'S VEHICLE STANDARDS UNDER SECTION 177 OF THE FEDERAL CLEAN AIR ACT (April 2025) https://perma.cc/VSW3-8TXE.

8

In the 2012 timeframe, EPA and California worked together to develop a national approach that ensured EPA's GHG-compliant fleets would also meet California's GHG standards and vice-versa, harmonizing the two. Ex. B (2017 and Later Model Year Emissions Standards, 77 Fed. Reg. 62624, 62630 (Oct. 15, 2012) (codified at 49 C.F.R. pts. 523, 531, 533, 536, 537) (ensuring that "manufacturers can build a single fleet of vehicles that satisfy all requirements under both federal programs as well as under California's program")).[5] Manufacturers universally certify their light-duty vehicles to meet both state and federal requirements.[6]

In 2019 and 2020, the first Trump administration issued "SAFE Part I," which rescinded a 2013 section 209(b) waiver, and "SAFE Part II," which rolled back the stringency of federal GHG standards for 2021 through 2025 and subsequent model years. Ex. C (SAFE Part I, 84 Fed. Reg. 51310 (Sept. 27, 2019) (codified at 49 C.F.R. pts. 531, 533)); Ex. D (SAFE Part II, 85 Fed. Reg. 24174 (Apr. 30, 2020) (codified at 49 C.F.R. pts. 523, 531, 533, 536, 537)). Minnesota, among other states, challenged these actions in the

---

[5] California adopted a state regulation providing an option for manufacturers to meet California's GHG emissions standards by meeting EPA's standards. Ex. G (Office of Transportation and Air Quality, EPA, Decision to Grant California's Request for Waiver of Preemption for its Advanced Clean Car Program (2012)). And in granting California's Section 209(b) waiver for its GHG emissions program, EPA recognized that "[t]he California GHG standards are almost identical in stringency and structure to the federal MY2017-2025 GHG standards." *Id*.; Ex. H (Decision to Grant California Waiver, 78 Fed. Reg. 2112 (Jan. 9, 2013)).

[6] The Amended Complaint does not allege that there are any vehicles being manufactured today that are not certified to both federal and California standards.

D.C. Circuit Court of Appeals, but the court did not rule because in January 2021, the new administration took efforts to reconsider the SAFE Part I and II actions. Ex. I (Exec. Order No. 13990, 86 Fed. Reg. 7037 (Jan. 20, 2021)).[7]

In 2021 and 2022, the EPA then reversed SAFE I as unlawful (thus reinstating the allegedly-withdrawn portions of California's 2013 waiver), and replaced SAFE II with revised federal GHG standards for 2023 through 2026 and subsequent model years. Ex. F (Revised 2023 and Later Model Year Emissions Standards, 86 Fed. Reg. 74434 (Dec. 30, 2021) (federal GHG standards)); Ex. A (87 Fed. Reg. at 14379 (reversing SAFE I)).

Importantly here, the GHG standards that EPA revised in its December 2021 rulemaking applied nationally on a fleetwide basis. These revised standards began with model year 2023, and restored parity with EPA's 2012 standards (which were themselves harmonized with the EPA-approved state standards) standards by model year 2025:

---

[7] *See Union of Concerned Scientists v. Nat'l Highway Traffic Safety Admin.*, No. 19-1230 (D.C. Cir. June 29, 2022) (SAFE I); *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, No. 20-1145 (D.C. Cir. June 8, 2022) (SAFE II).



Figure 1  EPA Final Industry Fleet-Wide $CO_2$ Compliance Targets, Compared to 2012 and SAFE Rules, the Proposal and Alternative 2 minus 10, g/mile, MYs 2020-2026 and later

Ex. F (86 Fed. Reg. at 74440 Fig.1 (annotated in blue)). In this figure, the dashed line labeled "2012 FRM" depicts the prior EPA standards that were "almost identical" to the state standards. Ex. G at 2; *accord* Ex. F (86 Fed. Reg. at 74457 (describing history of alignment with California's GHG program)).

Note that in 2026 and 2027, the state standards are shown as flatlining at 2025 levels, indicated by the gray dashed line for the 2012 FRM. *Id*. at 74440 Fig.1. EPA's "Final Standards," on the other hand, are the same as the "2012 FRM" standards in 2025 but become more stringent after 2025. This is important for this motion because as discussed in the next subsection, the challenged Rule did not go into effect until model year 2025 and drives no additional stringency beyond that model year—all while the federal standards continue with increasing stringency for 2026.

In April 2024, EPA published a final rule setting stronger GHG standards for light-duty vehicles starting with model year 2027. Ex. I (Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicle, 89 Fed. Reg. 27842 (April 18, 2024) ("Under the Clean Air Act, the Environmental Protection Agency (EPA) is establishing new, more protective emissions standards for criteria pollutants and greenhouse gases (GHG) for light-duty vehicles and Class 2b and 3 (medium-duty) vehicles that will phase-in over model years 2027 through 2032.")).

Automakers must produce and deliver a fleet between 2026 and 2032 that will achieve an approximately 49 percent reduction in total fleet $CO_2$ emissions from 168g to 85g of $CO_2$ per mile:

| TABLE 19—PROJECTED FLEET-WIDE $CO_2$ TARGETS CORRESPONDING TO THE FINAL STANDARDS [a][b] | | | |
|---|---|---|---|
| Model year | Cars $CO_2$ (g/mile) | Trucks $CO_2$ (g/mile) | Total fleet $CO_2$ (g/mile) |
| 2026 | 131 | 184 | 168 |
| 2027 | 139 | 184 | 170 |
| 2028 | 125 | 165 | 153 |
| 2029 | 112 | 146 | 136 |
| 2030 | 99 | 128 | 119 |
| 2031 | 86 | 109 | 102 |
| 2032 and later | 73 | 90 | 85 |

[a] MY 2026 targets are provided for reference. This table does not reflect changes in credit flexibilities such as the phase-out of available off-cycle and A/C credits as finalized for MY 2027.
[b] Fleet $CO_2$ targets are calculated based on projected car and truck share. Truck share for the fleet is expected to increase to 69 percent by MY 2026 (up from 64 percent in MY 2022) and to 70 percent by MY 2030 and later.

Ex. I (89 Fed. Reg. at 27908). These regulations currently have the force and effect of law.[8]

---

[8] On August 1, 2025, EPA proposed to rescind all federal GHG standards for light-duty, medium-duty, and heavy-duty vehicles and engines. Ex. N (90 Fed. Reg. 36,288). The comment period ended on September 22, 2025. 90 Fed. Reg. 39,345. The State of Minnesota submitted substantive comments. According to news media, EPA is slated to release its final rule in January 2026, but that prediction often has slipped. *E.g.*, Ex. M (*EPA falls behind schedule for repealing endangerment finding*, E&E NEWS (Nov. 20,

### B. Minnesota Rule's Standards, the 2025 ZEV Sunset, and the 2025 GHG Flatline

Minnesota law requires MPCA to protect public health and the environment from air pollution. Minn. Stat. § 116.07, subd. 2. The Rule was originally intended to accomplish just that. Ex. K (MPCA Statement of Need and Reasonableness (SONAR) for Proposed Revisions to Minnesota Rules at 8–9 (Dec. 14, 2020)). By regulating vehicle emissions, the State sought to address the single largest source of GHG emissions in Minnesota: the transportation sector. *Id.*[9] The Rule was intended to reduce emissions from combustion vehicles and accelerate the adoption of ZEVs in the state. Ex. K at 12–13, 46.[10]

But things have changed since then. While the Amended Complaint cites to the Rule's intent, it does not acknowledge these changed circumstances. MPCA initially identified emissions reductions based on savings calculated over the federal SAFE II GHG standards circa 2020. *See* Dkt. 63. ¶¶ 6, 10, 30; Dkt. 1 ¶¶ 30–52; Ex. K (SONAR at 8, at 19–20 (describing how the Rule combats the "backsliding" of SAFE II), 37 (same), 82 (same)). But EPA issued updated federal emissions requirements after that (in 2021, before this case was filed, and then in 2024, after this case was filed). These updated federal

_____

2025)). The State is not aware of any concrete plan for whether or when the administration will finalize its proposal, or what the contours of any final decision will be.

[9] *See also* Ex. O (Minn. Dept. of Transp., Pathways to Decarbonizing Transportation in Minnesota at 14 (2019)).

[10] 7 MPCA assessed relevant scientific and technical information. Exs. K at 20-21 (evaluating benefits even taking into account the manufacturing of the vehicle and battery), P (SONAR Appendix 1 - Technical Support Document)). Increased use of biofuels is one important component of decarbonizing the transportation sector. Ex. K at 8, 38; Ex. O at 5 Fig. 1, 41.

standards are in effect for model years 2025 and beyond and vastly outpace the Minnesota Rule. *See* subsection A, *supra*. So that comparison is not apt anymore. The Rule requires no emissions reductions beyond what the federal standards already require. *Id*.

Nonetheless, the rule is in effect—but only for certain model years. On December 27, 2021, MPCA published official notice that the Rule's first effective model year would be model year 2025. Ex. L (46 Minn. Reg. 741, 755 (Dec. 27, 2021)). Thus, the LEV standards apply to 2025 and subsequent model years, but as discussed above, flatline at the 2025 model year levels. Cal. Code Regs. tit. 13, §§ 1961.2, 1961.3.

The ZEV program is more limited; it applies in model year 2025 only. At the time of the Rule's publication, the incorporated California ZEV standard applied to 2018 <u>and subsequent</u> model years. But the incorporated California code was amended as California rolled out new regulations beginning with model year 2026[11]— Section 1962.2 (the ZEV standard) has been updated to apply to only model years 2018 <u>through 2025</u>. Cal. Code Regs. tit. 13, § 1962.2. Thus, the ZEV standard sunsets in the 2025 model year, making it the first and <u>only relevant</u> model year.

Importantly, the 2025 model year has been in effect since January 2, 2024, and has already passed or will imminently pass depending on production lines.[12]

---

[11] Ex. Q (Final Regulation Order on Amendments to Cal. Code Regs. tit. 13, § 1962.2 (ZEV amendments)).

[12] 40 C.F.R §85.2304(a) (2025) (providing that a model year starts on January 2 of the previous year and runs until production ends or December 31 of the calendar year at the absolute latest); 40 C.F. R. § 85.2303 (2025) (providing that "the maximum duration of a model year is one calendar year plus 364 days"); *see also* Minn. R. 7023.0200, subp. 9. ("

Minnesota has adopted no standards beyond that. California promulgated a new "ACCII"[13] program establishing LEV and ZEV standards for model year 2026 and beyond. *See* Dkt. 1 ¶¶ 136–139; Cal. Code Regs., tit. 13, § 1962.4. But the State has taken no action to adopt these new ACCII standards (and the new administration has purported to disapprove of EPA's waiver for ACCII using the Congressional Review Act, an issue currently being separately litigated).[14] To date, the federal government has taken no specific action to withdraw the ACCI waiver.[15]

Thus, the only standards in effect in Minnesota incorporate components of the ACCI program, which either expire in 2025 (ZEV) or flatline at 2025 levels (LEV including GHG), and have been eclipsed by the federal standards.

## LEGAL STANDARDS

Standing is a matter of subject-matter jurisdiction subject to Rule 12(b)(1). *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) ("if a plaintiff lacks standing to sue,

---

'Model year' means the manufacturer's annual production period that includes January 1 of a calendar year or, if the manufacturer has no annual production period, the calendar year. The model year for a motor vehicle manufactured in two or more stages is the model year in which the chassis is completed.").

[13] The package of state regulations for 2018-2025 are often called "Advanced Clean Cars I" or ACCI, and for 2026-2035, "Advanced Clean Cars II" or ACCII.

[14] *California Will Not Waiver*, *supra*.; Dkt. 1 at 15-21, *California v. EPA*, No 3:25-cv-04966 (Civil L.R. June 12, 2025).

[15] The Court should be aware that the federal government told the Supreme Court that it plans to rescind the reinstated portions of the ACCI waiver as well. *Diamond Energy*, 606 U.S. at 132 (Jackson, J. dissenting). To the extent the federal government makes good on this threat, the State reserves the right to seek supplemental briefing and/or a different schedule for consideration of the mootness implications.

the district court has no subject-matter jurisdiction"). A court reviewing a motion to dismiss for lack of subject-matter jurisdiction must first determine whether the movant is making a facial or factual attack. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a factual attack (as is presented here), the court may resolve the disputed facts, and is to provide no presumption of truth to the nonmoving party's allegations or evidence. *Id*. A court may hold an evidentiary hearing to determine the factual bases of standing. *Briley v. Carlin*, 172 F.3d 567, 570 (8th Cir. 1999). Trial courts have wide discretion to receive evidence and hold hearings to resolve disputed jurisdictional facts under Rule 12(b)(1). *Johnson v. United States,* 534 F.3d 958, 964 (8th Cir. 2008).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Courts "accept the factual allegations in the complaint as true and draw all reasonable inferences in the nonmovant's favor." *Ingram v. Arkansas Dep't of Correction*, 91 F.4th 924, 927 (8th Cir. 2024) (quoting *Cook v. George's, Inc*., 952 F.3d 935, 938 (8th Cir. 2020)).

Moreover, courts may consider materials necessarily embraced by the pleadings. *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012); *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 (8th Cir. 2012). This includes "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526

(8th Cir. 2017). "[C]ourts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint;' without converting the motion into one for summary judgment." *Id.* (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)). And of course the Federal Register is subject to judicial notice. 44 U.S.C. § 1507; *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).

The *Twombly* Court emphasized that "labels and conclusions" or "formulaic recitation of the elements of a cause of action" are insufficient to withstand a motion to dismiss. *Twombly*, 550 U.S. at 555. Instead, factual allegations must raise a right to relief above the speculative level and allow the court to infer that the defendant is liable for the alleged misconduct. *Id*. Moreover, courts "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts.'" *Ingram,* 91 F.4th at 927 (quoting *Glick v. Western Power Sports, Inc.,* 944 F.3d 714, 717 (8th Cir. 2019*)).* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. And to be considered plausible, legal conclusions must be supported by factual allegations. *Warmington v. Board of Regents of University of Minnesota*, 998 F.3d 789, 796 (2021).

## ARGUMENT

The Amended Complaint should be dismissed for three reasons. First, the Amended Complaint's challengea to the ZEV and GHG standards are moot because the ZEV standard has lapsed and the GHG standards have been surpassed by federal regulations. Second,

Plaintiff's do not have standing. As a matter of law, the ZEV program includes a one-year allocation and requires no action by manufacturers, and the GHG program imposes no additional stringency beyond the federal standards. And as a matter of fact, movants dispute Plaintiffs' allegations of harm. On this front, the Amended Complaint relies too heavily on *Diamond Energy* which is readily distinguishable. Third, the Court should accept Plaintiffs' representation that the Amended Complaint does not seek to invalidate the Rule's criteria pollution standard and enter an Order implementing it.[16]

## I.    THE AMENDED COMPLAINT SHOULD BE DISMISSED AS MOOT.

"To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). If not, the case becomes moot. *Sawczyn v. BMO Harris Bank Nat. Ass'n*, 8 F. Supp. 3d 1108, 1113 (D. Minn. 2014). "[M]ootness [i]s 'the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, Constitutional Adjudication: The Who and When, 82 Yale L.J. 1363, 1384 (1973)).

A case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already*, 568 U.S. at 90–91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam)). "No matter how vehemently the

---

[16] *See* Ex. J (meet-and-confer correspondence).

parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009)).

Mootness can occur during a case even if standing originally existed to bring the suit. (The State disputes Plaintiffs' standing in Section II below.) For the purpose of analyzing mootness in this Section, the Court should assume without deciding that Plaintiffs had standing at the commencement of the litigation. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 66–67 (1997) (court may assume without deciding that standing exists in order to analyze mootness). Indeed, *Diamond Energy* itself stated that under certain circumstances a legal challenge to a regulation that expires involves an altogether different analysis from standing. *Diamond Energy*, 606 U.S. at 121–22 ("[W]e recognize that there may conceivably be some atypical instances where a market has permanently and dramatically changed such that invalidating a challenged regulation would have no effect on the market in question, thereby defeating redressability"); n.6 ("Or a regulation may have expired, making the legal challenge moot. But that scenario is covered by mootness doctrine, not redressability.").

Changed circumstances moot this case as to ZEV and GHG standards. Model year 2025—the only year in which the ZEV standard applies in Minnesota—has expired or will imminently expire. And the Rule's GHG standard flatlined at model year 2025 stringency levels while the federal standards' stringency increases in 2026 and beyond.

**A. Plaintiffs' Challenge to the ZEV Standard is Moot Because the 2025 Model Year has Lapsed.**

Plaintiffs' challenge to the Rule's ZEV standard is moot because the 2025 model year is over. Production of model year 2025 vehicles began January 2 of 2024 and ran through the end of production or December 31, 2025 at the absolute latest.[17] Manufactures are already eleven months into the model year 2026 production window, which began January 2, 2025. Manufacturers are not only producing but are now delivering model year 2026 vehicles for sale in Minnesota and are rapidly approaching production and delivery of model year 2027 models (beginning January 2, 2026). *Id.*

Given this background, the Amended Complaint conspicuously fails to allege that any manufacturer is still producing or delivering any new model year 2025 ZEVs into Minnesota, much less that any manufacturer could change its model year 2025 production plans this late in the run (especially where it is halfway through the 2026 model year).[18]

Thus, Minnesota's ZEV requirements have already lapsed, mooting the need for the court to consider Plaintiffs' challenge to the ZEV component of the Minnesota Clean Cars Rule. The Amended Complaint should be dismissed for mootness as to the ZEV challenge.

---

[17] *See supra*, note 12.

[18] Plaintiffs deleted their allegation that automakers were already committed to their plans in 2023 for the 2025 model year (*see* Dkt. 63-1 at ¶ 65) but it remains true nonetheless that automakers must plan ahead well in advance. *E.g.*, *Ohio v. EPA*, 98 F. 4th at 302-03 (describing auto industry's lead times—an issue that is not addressed in *Diamond Energy*). There is no plausible allegation that any automaker is likely to change its plans after a production run is over or for the last few weeks of a calendar year.

### B. Plaintiffs' Challenge to the GHG Standard is Moot Because the Rule's Emissions Requirements Flatlined at 2025 Levels, Whereas Federal Regulations are now More Stringent than the Rule.

Plaintiffs' challenge to the Rule's GHG standard has been mooted by two events occurring since this case was first filed. [19] First, the passage of time puts us solidly in model year 2026, in which the federal standards are more stringent than the Rule's. Second, EPA's April 2024 rulemaking set the federal standards at even more stringent levels than the Rule's for 2027 and beyond—beginning in just a few weeks on January 2, 2026.[20] *See* Regulatory Background subsection A, *supra*.

The Amended Complaint does not allege that the fleet that has already been manufactured and delivered into Minnesota fell short of the nationwide GHG standards for model year 2025, or that the fleet of 2026 model year vehicles that have been delivered thus far will not comply with the even-more-stringent federal standards. Dkt. 63 ¶¶ 81–93. And of course, the increasingly-strict federal standards that EPA promulgated for model years 2027 through 2032 are still in force and effect as of the date of this memorandum. The Amended Complaint fails to allege that the Rule imposes any requirements for model

---

[19] The Amended Complaint relates back to the date of the Original Complaint under Rule 15(c) because both documents relate to the State's adoption of the Rule and bring the same preemption claim. Fed. R. Civ. P. 15(c). Thus, the Amended Complaint is "tied to a common core of operative facts." *Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015).

[20] This Court should consider the federal standards that the Amended Complaint completely ignores because they are squarely implicated by the face of the complaint and carry the force and effect of law. *Zean*, 858 F.3d at 526.

years 2026 or beyond that will cause injury to Plaintiffs when factoring in those federal requirements.

The Amended Complaint is therefore moot because the Rule has been eclipsed by the federal GHG standards, and the Amended Complaint fails to provide more than a "sheer possibility" that manufacturers have failed to comply or will not comply with these federal standards now that they are in effect. *Iqbal*, 556 U.S. at 678.

The federal standards that took effect beginning in model year 2026, and will take effect on January 2, 2026 for model year 2027 have mooted the Amended Complaint. The case should be dismissed as to the Plaintiffs' GHG challenge.

## II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM.

Unlike mootness, which focuses on developments since the case began, standing is assessed as of the date the case was filed. While the case is indeed moot as discussed above, Plaintiffs fare no better under either Rule 12(b)(6) (failure to state a claim) or 12(b)(1) (subject matter jurisdiction).

At the time of filing,[21] this case relied on Plaintiffs' allegations that the Rule would necessarily force automakers to deliver more ZEV and LEV vehicles into the state than they otherwise might beginning with model year 2025. *E.g.* Dkt. 63 ¶¶ 3, 11; Dkt. 1 ¶¶ 5, 30. But even at the time of filing, the 2021 standards were in effect and applied to model years 2025 and 2026. In light of the federal standards for those model years, the Amended

---

[21] For the purpose of assessing standing, the State again presumes the original filing date of March 13, 2023. *See supra* note 19.

Complaint does not adequately plead, or does not plausibly allege, that the Rule would cause Plaintiffs harm or that their alleged harm would be redressable by setting the Rule aside. (And at this point, such facts are readily ascertainable from an evidentiary standpoint; model year 2025 is already over[22] and model year 2026 is underway.)

A plaintiff bears the burden of demonstrating standing—"a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). To establish standing, Plaintiffs must show: (1) they have suffered an "injury in fact", (2) that there is a causal connection between the alleged injury and the defendant's conduct, and (3) that judicial relief will likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). "Therefore, on a motion to dismiss, 'plaintiffs must allege sufficient facts to support a reasonable inference that they can satisfy the elements of standing.'" *Missouri v. Biden*, 738 F. Supp. 3d 1113, 1142 (E.D. Mo. 2024), *aff'd and remanded sub nom. Missouri v. Trump*, 128 F.4th 979 (8th Cir. 2025) (quoting *Vaught*, 8 F.4th at 718 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007))).

To establish an injury in fact, Plaintiffs must establish "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting

---

[22] Automakers have not yet certified their 2025 deliveries into the State for either the LEV or ZEV standard, but they will soon; reports are due May 1, 2026. Minn. R. 7023.0250, subp. 7; Minn R. 7023.0300, subp. 2(B).

*Lujan*, 504 U.S. at 560). To establish causation, "the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Agred Found. v. U.S. Army Corps of Eng'rs*, 3 F.4th 1069, 1073 (8th Cir. 2021) (citation omitted). This "requires the plaintiff to show a sufficiently direct causal connection between the challenged action and the identified harm. That connection cannot be overly attenuated." *Id*. (citation omitted). "Redressability requires the plaintiff to show that 'it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Id*. (quoting *Lujan*, 504 U.S. at 561 (cleaned up)).

For both the ZEV and GHG standards, the Amended Complaint fails to establish, and the State disputes, the existence of any injury-in-fact, causation, or redressability. Under the Rule 12(b)(6) *Iqbal/Twombly* standard for failure to state a claim, Plaintiff's allegations regarding the ZEV requirement fail to plausibly establish an actual injury from the ZEV requirement, fail to demonstrate any injury will be caused by the Minnesota ZEV requirement, and cannot demonstrate that any injury could be redressed by the Court. And under the Rule 12(b)(1) standard, the Court should not accept any of the disputed allegations as true; it should instead test the evidence. *Johnson,* 534, F.3d at 964.

### A. Even if the ZEV Challenge Were Not Moot, the First-Year Credit Allotment Eliminates Plaintiffs' Standing at the Outset.

Plaintiffs do not have standing to challenge the ZEV standard on injury, causation, or redressability grounds because the standard allots sufficient credits to automakers in the first year to ensure automatic compliance. Minn. R. 7023.0300, subp. 5 (onetime credit allotment). The Rule provides that for "the first effective model year" each automaker

receives "a credit allotment equivalent to the first effective model year's ZEV credit requirement for that motor vehicle manufacturer." Minn. R. 7023.0300, subp. 5(A). In short, each manufacturer received one year's worth of credits for model year 2025. *Id*. And pursuant to the one-year allotment, auto manufacturers will automatically receive all the credits they need to comply with it. Minn. R. 7023.0300, subp. 5(A). Manufacturers did not need to make any changes to the vehicles they sold in Minnesota in model year 2025 (or any other model year) to comply with the ZEV standard.

And model year 2025 is the only one for which ZEV requirements applied. When California adopted new ZEV standards (in a new code section) for model year 2026 and beyond, *see* Dkt. 1 ¶¶ 136-139, it also amended the section incorporated in the Rule's ZEV regulation. Minn. R. 7023.0300 (incorporating by reference Cal. Code Regs., tit. 13, § 1962.2); Ex. Q (Cal. Code Regs., tit. 13, § 1962.2(b)(1)(A) (changing "2018 and subsequent" to "2018 through 2025")); *supra*, Regulatory Background subsection B. Thus, the Rule's ZEV regulation ends after model year 2025.

Thus, unlike in *Diamond Energy*, Automakers need not do anything the Amended Complaint asserts to comply with the Rule's ZEV requirements for model year 2025 because they are automatically provided with all the credits they need for compliance. *See Missouri*, 738 F. Supp. 3d at 1142; *Robins*, 578 U.S. at 340; *Agred Found*, 3 F.4th at 1073. Automakers have not been "forced" to take any particular action to comply with the ZEV standard because they are already in compliance and the program is in effect for only one year (which has already lapsed). The Amended Complaint does not—and cannot—contain

any allegation explaining how the ZEV standard would compel automakers to deliver a single vehicle (much less a fleet of vehicles) that Plaintiffs would find harmful moving forward. To the extent any allegations run to the contrary they are simply not plausible. *See Iqbal*, 556 U.S. at 678. And that is why *Diamond Energy* does not save Plaintiffs here. The one-year ZEV credit allotment and one-year compliance window were not present in *Diamond Energy*'s assessment of redressability, nor did the Supreme Court consider the State's arguments as to lack of injury-in-fact and lack of causation.

The Amended Complaint fails to plausibly allege harm or causation from the ZEV standard. Nor does it plausibly allege that any such harm would be redressed by a favorable decision from this Court. The claims directed to the ZEV requirements should therefore be dismissed, *Lujan*, 504 U.S.at 561; Fed. R. Civ. P. 12(b)(6). Alternatively, the Court should allow the State to take limited jurisdictional discovery and hold an evidentiary hearing under Rule 12(b)(1) directed to (a) reveal how automakers complied with the ZEV standard, and (b) test the Plaintiffs allegations of harm, causation, and redressability.

**B. Even if the GHG Challenge Were not Moot, Plaintiffs Still Lack Standing; *Diamond Energy* Does Not Apply.**

The Court should also dismiss the Amended Complaint as to its challenge to the Rule's GHG requirements for lack of adequately pled injury-in-fact, causation, or redressability—or it should take evidence to determine the factual bases of these elements.

As discussed above, for model year 2025, the federal GHG standards are essentially the same as Minnesota's Rule. But Minnesota's GHG standards flatline after 2025, while the federal GHG standards become <u>more</u> stringent than Minnesota's for model year 2026.

26

*Id*. And the current federal standards beginning in model year 2027 are increasingly-more stringent than the Rule's on a national fleet-wide basis. Compare Ex. I (89 Fed. Reg. at 27908) with Minn. R. 7023.0250, supt. 3.B and California Code of Regulations, title 13, section 1961.3. Plus, the 2025 model year is over. We are now well into model year 2026, which began as early as January 2, 2025. And model year 2027 starts January 2, 2026.

Automakers have thus already complied with the 2025 GHG standard or otherwise committed to their plans for doing so. And beyond the 2025 model year, the Rule drives no additional stringency requirements for 2026 and later years while the federal emissions standards require increasingly-more-stringent emissions limits.

Yet the Amended Complaint ignores the current federal requirements altogether. Dkt. 63 at *passim*. It does not allege that Plaintiffs would be injured by the Minnesota Rule notwithstanding the federal requirements that apply for model years 2026 and beyond. *See* Dkt. 63 at ¶¶ 36–43 (sales), ¶¶ 43–45 (service); ¶¶ 47–51 (same). The Amended Complaint contains no allegations about the federal standards applicable in model year 2025 (which is now over). *See* Dkt. 63 at ¶¶ 66–80. And nowhere in its description of purported harm does the Amended Complaint allege that automakers will not comply with the increasingly stringent federal emissions standards that are in place for model years 2026 and beyond, although these vehicles are being manufactured and delivered into Minnesota now. *See id*. at ¶¶ 36–52. The Amended Complaint does not allege that it is "predictable" or "commonsense" or "likely" that automakers would ignore these federal regulations, much less allege any fact that would make that probable or plausible. *Contra Diamond Energy*,

27

606 U.S. at 114 (alleged injury must be likely), 116 (plaintiff must establish predictable/commonsense injury from regulation).

Thus, this case is worlds apart from the sort of "common sense" or "predictable" conclusions that could be drawn in *Diamond Energy*. The combination of facts and law presented in this case are fundamentally different for three reasons.

First, there is a difference in timing. *Diamond Energy* challenged EPA's decision to reinstate the waiver for <u>California's</u> ACC1 clean vehicles standards applicable in model years 2023, 2024, and 2025. And as discussed above, the state standards were indeed more stringent than the federal standards that were applicable in 2023 and 2024 model years because of the SAFE-II standards that EPA finalized in April of 2020. Thus, the California standards at issue in *Diamond Energy* were in effect at a time when the federal standards were <u>less</u> stringent than the state standards. That is not the case here, because <u>Minnesota's</u> Rule applies beginning with model year 2025. The purportedly common sense conclusion that can be drawn for California simply do not apply for Minnesota given this distinction.

Second, *Diamond Energy* is distinguishable because it originated in the Court of Appeals[23] and thus did not apply the Federal Rules of Civil Procedure. Here in the District of Minnesota, however, Rule 12(b)(1) provides a process for district courts to resolve disputed facts, including a mechanism for jurisdictional discovery and even evidentiary hearings to test claims of jurisdiction. *Osborn*, 918 F.2d at 729 n.6; *Briley*, 172 at 570;

---

[23] The D.C. Circuit Court of Appeals exercised original jurisdiction pursuant to 42. U.S.C. § 7606(b)(1).

*Johnson,* 534 F.3d at 964. The "standing declarations" offered under the Federal Rules of Appellate procedure are no substitute for the sort of scrutiny that District Courts apply to receiving evidence. Moreover, Rule 12(b)(6) applies the plausibility pleading standard that was not present in *Diamond Energy*. *Iqbal*, 556 U.S. at 678. The current federal regulatory regime undermines the plausibility of the Plaintiffs' allegations.

Third, the respondents (and intervenors in support of respondents) in *Diamond Energy* conceded injury and causation, so its analysis is limited to redressability. This motion, however, disputes all elements of standing including injury, causation, *and* redressability. These are contested facts that are not to be taken as true, Rule 12(b)(1), or that are not plausibly alleged under Rule 12(b)(6).

On these distinctions, the Amended Complaint completely misreads *Diamond Energy* when it alleges that standing is a foregone conclusion as a matter of law. Dkt. 63 at ¶¶ 31, 47–51. This Court's hands are not so tied.

But even if we were to consider such cases as controlling, a better authority is *Chamber of Commerce*, a case challenging EPA's decision to issue California its Section 209(b) waiver brought by (among others) the National Automobile Dealers Association. There, the court found the case was moot because the federal standards would be just as stringent as California's. *Chamber of Com.*, 642 F.3d at 205–206. EPA had already ensured regulatory alignment between the California standards and the federal standards when the court adjudicated the matter:

> Beginning in [model year] 2012, automobile manufacturers will have to comply with the national standards whether we vacate the waiver decision or

29

not. Hence, the national standards, and not EPA's waiver decision, will be responsible for any injury NADA members may suffer . . .

*Id*. at 206. When federal and state standards are aligned, "the national standards, and not [California's], will be responsible for any injury" the Plaintiffs or their "members may suffer." *Id*. *Diamond Energy* did nothing to disturb the logic from the *Chamber of Commerce* case in situations where the federal standards are equally or more stringent than state standards.

For reasons similar to those in *Chamber of Commerce*, the Amended Complaint does not allege facts sufficient to show that manufacturers "would proceed on a different course more favorable to" Plaintiffs if this Court were to declare the Rule invalid. *Id*. at 642 F.3d at 206. This undermines injury in fact, causation, and redressability.

The Amended Complaint's claims as to the GHG standards should therefore be dismissed for lack of standing, *Lujan*, 504 U.S.at 561; Fed. R. Civ. P. 12(b)(1).[24] Alternatively, the Court should allow the State to take limited jurisdictional discovery and hold an evidentiary hearing under Rule 12(b)(1) directed to (a) establishing how automakers complied with the LEV standard in 2025, and intend to comply with it in future years, and (b) test the Plaintiffs allegations of injury, causation, and redressability.

---

[24] At the time of this motion, the federal standards for 2027 and beyond remain in place. *See supra* note 8. This case can therefore be dismissed without prejudice now. If the proposed reconsideration of EPA's endangerment finding is finalized, Plaintiffs are free to refile if they think their claims have become ripe. But on this Amended Complaint, however, the Plaintiff's case had not "matured enough to warrant judicial intervention" at the time it was initially filed. *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 796–97 (8th Cir. 2016).

## III.  THE AMENDED COMPLAINT DOES NOT REACH CRITERIA POLLUTION STANDARDS

The Amended Complaint does not state a claim as to the Rule's criteria pollution standards because it contains insufficient detail to establish the elements of any claim. A single paragraph of the Amended Complaint alleges:

> The incorporated regulations sweep broadly, imposing maximum non-methane organic gases, nitrogen oxides, carbon monoxide, formaldehyde, and particulate emissions for certain motor vehicles that become increasingly burdensome each year, *see* Cal. Code Regs. tit. 13, § 1961.2, and fleet-average carbon-dioxide emission standards that also become more stringent each year before plateauing after model year 2025, *id.* § 1961.3.

Dkt. 63 ¶ 90. The Amended Complaint is otherwise devoid of any allegations as to how Plaintiffs are injured by the criteria pollution standards, how the criteria pollution standards cause that harm, or how the requested relief could possibly redress that harm. The Amended Complaint further fails to state how the criteria pollution standards are preempted by EPCA. Yet the Amended Complaint asks this Court to set aside the entirety of the Rule's LEV standards, including the criteria pollution requirements without identifying any harm or causation.

The parties agree—so the State now withdraws—its motion on this point (which would have covered 12(b) (failure to state a claim, standing) and 12(e) (more definite statement)). Specifically, Plaintiffs confirm that the Amended Complaint <u>does not extend</u> to the Rule's criteria pollution standard, although they demur on revising the Amended Complaint accordingly.[25] The Court should enter an Order that ratifies this agreement.

---

[25] *See* Ex. J (meet-and-confer correspondence).

31

## CONCLUSION

This case has been mooted. The ZEV standard lapsed with the passage of the 2025 model year. And the GHG standard has been eclipsed by more-stringent federal standards for model years 2026, 2027, and beyond. Even if this case is not moot, the Plaintiffs never had standing to bring it in the first place because the ZEV standard allotted sufficient credits for compliance with no further action by automakers and because the federal GHG standard was equivalent to, or more stringent than, the state standard beginning with model year 2025. The Plaintiffs did not plausibly allege, and the State disputes, that Plaintiffs are injured, that any injury is caused by the Rule, and that any injury would be redressed by setting the Rule aside.

This Court should GRANT the motion to dismiss on mootness grounds, and also on standing grounds according to Rule 12(b)(6).

In the alternative, the Court should enter an Order pursuant to Rule 12(b)(1) allowing the State to take jurisdictional discovery to support its challenge to the factual bases for Plaintiffs asserted standing grounds.

The Court should also enter an Order accepting the parties' agreement that this case does not reach the Rule's criteria pollution standard.

Respectfully Submitted,

Dated: November 26, 2025

**KEITH ELLISON**
**MINNESOTA ATTORNEY GENERAL**

*/s/ Peter N. Surdo*
Peter N. Surdo,
MN Atty. Reg. No. 0339015
Special Assistant Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651)757-1061
peter.surdo@ag.state.mn.us

Catherine Rios-Keating
Atty. Reg. No. 0402940
Special Assistant Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651) 300-7302
catherine.rios-keating@ag.state.mn.us

*Attorneys for Katrina Kessler in her official capacity as Commissioner of the MPCA, Peter Tester, in his official capacity as Deputy Commissioner of MPCA, Frank Kohlasch in his official capacity as Assistant Commissioner of MPCA, Kirk Koudelka in his official capacity as Assistant Commissioner of MPCA, Dana Vanderbosch in her official capacity as Assistant Commissioner of MPCA, and Timothy J. Walz in his official capacity as Governor of the State of Minnesota*

33